# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA
### CASE NO. 5:21-CV-00488

| | | |
|---|---|---|
| PHILIP BULLS, DEAN BRINK, CARMIN NOWLIN, AND NICHOLAS PADAO, *on behalf of themselves and others similarly situated*, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | **COMPLAINT—CLASS ACTION** |
| v. | ) ) | **JURY TRIAL DEMANDED** |
| USAA FEDERAL SAVINGS BANK, and USAA SAVINGS BANK, | ) ) ) | |
| Defendants. | ) ) ) | |

Plaintiffs Philip Bulls, Dean Brink, Carmin Nowlin, and Nicholas Padao, individually and on behalf of a class of similarly situated persons, hereby file this Class Action Complaint, making the allegations herein upon personal knowledge as to themselves and their own acts, and upon information and belief and based upon investigation of counsel as to all other matters, as set forth herein.

## INTRODUCTION

1.      Since the beginning of the Iraq War through the present, members of our military services have been asked to make many sacrifices for our nation. One of these sacrifices is financial: leaving family, friends and the comforts of civilian life to answer our country's call to duty also requires leaving behind employment, a career, and financial security. The Servicemembers Civil Relief Act ("SCRA"), 50 U.S.C. §§ 3901 *et seq.* (formerly 50 U.S.C. App. §§ 501 *et seq.*), was enacted to address this sacrifice, and seeks "to enable [servicemembers] to devote their entire energy to defense needs of the Nation." 50 U.S.C. § 3902(1). The SCRA

guarantees that all debts incurred by a servicemember before being called to active duty are reduced to a 6% interest rate, from the date deployment orders are received through the ensuing active-duty period as required by 50 U.S.C. § 3937. The Act also requires financial institutions to permanently forgive interest above 6%.

2.      To attract and retain the businesses of active military members, Defendants USAA Federal Savings Bank and USAA Savings Bank (collectively "Defendants") provide contractual benefits that are more generous than required by the SCRA, which Defendants refer to as USAA's Military Benefits Program.

3.      Defendants market heavily to servicemembers as a bank dedicated to military members, veterans, and their families.  Defendants breached their statutory and contractual duties to America's fighting forces by charging interest rates and fees that were too high, allowing unlawful charges to improperly inflate servicemembers' principal balances; and charging compound interest on these inflated balances.

4.      Defendants then concealed their overcharges from the thousands of military families victimized by Defendants' practices. Plaintiffs and other class members did not discover that Defendants were violating their rights until 2021, when Defendants sent misleading correspondence and payment checks to some military families. When Defendants' actions led Plaintiffs to investigate Defendants' compliance with the SCRA and USAA's Military Benefits Program, they learned that Defendants had committed wholesale violations of the SCRA and other military benefits which caused damages to thousands of military families.

5.       The named plaintiffs in this action represented and protected our nation through military service. They now seek to represent and protect their fellow servicemembers and veterans through this class action.

## JURISDICTION AND VENUE

6.     Plaintiffs invoke the jurisdiction of this Court pursuant to 28 U.S.C. § 1331 because this action arises, in part, under the laws of the United States, including the Servicemembers Civil Relief Act ("SCRA") 50 U.S.C. § 3901 *et seq*. Section 4042(a).

7.     In addition, this Court has original jurisdiction pursuant to 28 U.S.C. § 1332(d)(2) and (6) because the aggregate claims of the proposed class members exceed $5,000,000, and at least one named plaintiff resides in a different state than Defendants. The amount in controversy in this matter includes, but is not limited to, actual and consequential monetary damages, disgorgement of Defendants' ill-gotten gains, punitive damages, civil penalties, and attorneys' fees and costs.

8.     This Court has personal jurisdiction over Defendants, as they conduct business activities which are the subject of the present complaint in North Carolina.

9.     Venue is proper in this Court, as one of the named plaintiffs resides in this district, Defendants conduct business within the district, and many of the business activities, events, and/or wrongdoing giving rise to the claims asserted in this Complaint occurred therein.  Maintaining the venue of this class action in this district is therefore proper under 28 U.S.C. § 1391.

## PARTIES

10.     Plaintiffs file this Complaint in their individual capacity, and as a class action on behalf of themselves and all others similarly situated. They, along with other class members who may be named as class representatives at the time a motion is filed to certify the proposed class, will represent the following class:

> All persons who, at any time on or after September 11, 2001, received reduced
> interest and/or fee benefits from Defendants on an interest-bearing obligation

because of an obligor's military service, but excluding persons who have executed a release of the rights claimed in this action.

11.    Plaintiffs had one or more interest-bearing obligations to Defendants that qualified for and legally required reduced interest and/or fees benefits from Defendants because of an obligor's military service.

12.    Defendant USAA Federal Savings Bank is a federal savings association within the meaning of 12 U.S.C. § 1813(q)(1)(C).  Upon information and belief, Defendant USAA Federal Savings Bank is a federally chartered savings bank with a principal place of business in San Antonio, Texas, and this Defendant may be served with process through its registered agent, CT Corporation System, 350 N. St. Paul St., Ste. 2900, Dallas, TX 75201.

13.    Defendant USAA Federal Savings Bank provides banking products and services to customers across the United States, including credit cards (through its operating subsidiary, Defendant USAA Savings Bank), consumer loans, home equity loans, mortgages, real estate brokerage services, trust services, checking, savings and time deposits.

14.    Defendant USAA Savings Bank is a subsidiary of Defendant USAA Federal Savings Bank that issues credit cards. Credit cards issued by USAA Savings Bank are serviced by USAA Federal Savings Bank.  Upon information and belief, Defendant USAA Savings Bank has a principal place of business in Nevada and may be served with process at its corporate address located at 3773 Howard Hughes Pkwy Ste 119 Las Vegas, NV, 89169-0949, and/or may be served with process through its registered agent Corporation Service Company at its address 112 North Curry Street, Carson City, NV 89703.

15.    Upon information and belief, Defendants do substantial business in the State of North Carolina with a corporate office, employees, and customers located in North Carolina.  Upon

information and belief, Defendants maintain minimum contacts with the State of North Carolina to satisfy the due process clause of the United States Constitution, and Defendants have sufficient minimum contacts with the State of North Carolina such that maintenance of this suit does not offend traditional notions of fair play and substantial justice.

## CLASS ACTION ALLEGATIONS

**Class Definition**

16.    In accordance with Federal Rule of Civil Procedure 23, Plaintiffs bring this action in their individual capacity and as a class action on behalf of themselves and all others similarly situated. They, along with other class members who may be named as class representatives at the time a motion is filed to certify the proposed class, will represent the following class:

> All persons who, at any time on or after September 11, 2001, received reduced interest and/or fee benefits from Defendants on an interest-bearing obligation because of an obligor's military service, but excluding persons who have executed a release of the rights claimed in this action.

17.    Plaintiffs also seek to certify a Florida Subclass, defined as "Members of the class who, at any time during the class period, were residents of the State of Florida while receiving reduced interest and/or fee benefits from Defendants on an interest-bearing obligation because of an obligor's military service."

18.    This class action satisfies the requirements of Federal Rule of Civil Procedure 23, including, but not limited to, numerosity, commonality, typicality, adequacy, and predominance.

**Impracticable Joinder**

19.    The proposed class is composed of tens of thousands of persons, geographically dispersed throughout the United States and serving the country overseas, the joinder of whom in

one action is impracticable. The disposition of their claims in a class action will provide substantial benefits to both parties and the Court. Defendants, either directly or through affiliated entities, are in possession of the names and addresses of all class members.

20.     Class treatment is particularly appropriate here because Defendants conduct business in every jurisdiction in the United States. Further, this matter involves multiple federal statutes which were extensively and harmfully misapplied and violated by Defendants.

**Risk of Inconsistent or Varying Adjudications**

21.     Prosecution of separate actions by class members would risk inconsistent or varying adjudications, which would establish incompatible standards of conduct for Defendants.

22.     Further, the outcomes of separate actions by individual members of the class could, as a practical matter, be potentially dispositive of the interests of other members of the class and substantially impair or impede their ability to protect their interests. Class-wide adjudication of Plaintiffs' claims, therefore, is appropriate.

23.     Defendants have acted on grounds generally applicable to the class, thereby making class-wide adjudication of these claims appropriate.

**Common Questions of Law and Fact**

24.     There exists a well-defined community of interests and questions common to the class, which predominate over individual factual or legal questions. These common factual and legal questions include, but are not limited to:

(a)     Whether Defendants improperly applied the SCRA to class members' accounts, thereby denying them benefits to which they are entitled by law;

(b)     Whether USAA's Military Benefits Program, as described herein, constituted an enforceable contract term or a separately enforceable contract between

6

Defendants and class members, and whether Defendants' violations of the terms of its program gives rise to liability for breach of contract and/or violation of the SCRA;

(c)     Whether Defendants' practices violated the Truth in Lending Act;

(d)     Whether Defendants violated the Nevada Deceptive Trade Practices Act, Nev. Rev. Stat. §§ 598.0903-.0999 ("DTPA"), and other applicable laws and regulations;

(e)     Whether Defendants' violations of the SCRA and TILA constitute a *per se* violation of the DTPA;

(f)     Whether Defendants knew, reasonably should have known, or recklessly disregarded that their acts and practices were unlawful;

(g)     Whether Defendants' acts and practices were negligent;

(h)     Whether Defendants engaged in practices intending to deceive consumers;

(i)     Whether Defendants are entitled to an offset of damages for voluntary payments sent to some class members;

(j)     Whether Plaintiffs and class members who received such payments have suffered or will suffer damages when Defendants overstate the taxable component of the payments to the Internal Revenue Service, causing such class members to be charged excess taxes;

(k)     Whether Plaintiffs and the class are entitled to statutory, actual, consequential, and/or punitive damages;

(l)     Whether Plaintiffs and the class are entitled to an accounting;

(m)     Whether Defendants owed fiduciary duties to the Plaintiffs and the class and whether they breached such duties; and

7

(n)      Whether Plaintiffs and the class are entitled to recovery of attorney's fees and costs.

**Typicality**

25.      The individual Plaintiffs and the class representatives to be named are asserting claims that are typical of the claims of the entire class, and the class representatives will fairly and adequately represent and protect the interests of the class in that they have no interests antagonistic to those of the other members of the class.

**Fair and Adequate Representation**

26.      The individual Plaintiffs have retained counsel who are competent and experienced in the handling of litigation, including class action litigation, and who will fairly and adequately represent and protect the interests of the class. Likewise, the class representatives will fairly and adequately represent and protect the interests of the class as a whole.

**Superiority of Class Action Procedure**

27.      The individual Plaintiffs and other class members have all suffered damages as a result of Defendants' unlawful and wrongful conduct. Absent a class action, Defendants will likely retain a substantial unlawful gain, their conduct will go un-remedied and uncorrected, and the class members will likely be deprived of adequate relief. Class action treatment of these claims is superior to handling the claim in other ways.

28.      Certification of the class is appropriate under Federal Rule of Civil Procedure 23.

## STATEMENT OF FACTS

**Plaintiff Philip Bulls**

29.     Plaintiff Philip Bulls resides in Clayton, North Carolina. He served our Nation between 1989 and 2020, as a member of the army reserves and during repeated periods of active duty.

30.     During this period of service, Mr. Bulls has had numerous interest-bearing accounts with Defendants, including credit cards, automobile loans, consumer loans, and home equity loans.

31.     Defendants have provided Mr. Bulls with interest rate and fee benefits under the SCRA and/or their Military Benefits Program.  For example, Defendants provided him with an interest rate of 4% during active duty and since he has left active duty, and he has taken out debt while enjoying these benefits.

32.     Defendants failed to reduce the interest rate and waive fees as required by the SCRA and/or their Military Benefits Program.  This practice was imperceptible to Mr. Bulls, as his monthly statements and other correspondence contained misrepresentations that he was being charged the correct interest rate.

33.     Mr. Bulls relied on the misrepresentations in Defendants' monthly account statements and correspondence when choosing to maintain accounts with Defendants. He also continued to use the accounts and incur more debt on them, to Defendants' benefit, based upon Defendants' representations that they were complying with the SCRA and their Military Benefits Program.  Had he known that Defendants were charging them a higher interest rate than permitted by the SCRA or their Military Benefits Program, he would have closed accounts with Defendants and moved to another bank.

34.     Mr. Bulls paid more in interest charges and fees on accounts with Defendants than should have been due under a correct application of the SCRA and the Military Benefits Program.

35.     Mr. Bulls never received an accounting of the overcharged interest or improper fees. Upon information and belief, Defendants are still in possession of certain funds which were obtained as a result of the overcharged interest and improper fees.

36.     Defendants provided Mr. Bulls with eight different checks indicating that they may have overcharged him under the SCRA on various interest-bearing loans. Mr. Bulls never received an accounting or similar documentation related to the checks he received, or an explanation of how Defendants calculated the overcharges or how they will determine the amount of taxable income to be reported to the Internal Revenue System.

**Plaintiff Dean Brink**

37.     Plaintiff Dean Brink resides in Placida, Florida. He served our Nation beginning in 1992, serving on active duty for the US Army, including deployments to Saudi Arabia and Afghanistan, and with the Florida National Guard.  He was medically retired in 2016 for deployment-related injuries and illness.  He continues to volunteer helping veterans in filing for veterans' and disability benefits.

38.     During this period of service, Mr. Brink has had numerous interest-bearing accounts with Defendants, including credit cards, automobile loans, consumer loans, and home equity loans.

39.     Defendants have provided Mr. Brink with interest rate and fee benefits under the SCRA and/or their Military Benefits Program.

40.     Defendants failed to reduce the interest rate and waive fees as required by the SCRA and/or their Military Benefits Program.  This practice was imperceptible to Mr. Brink, as

his monthly statements and other correspondence contained misrepresentations that he was being charged the correct interest rate.

41.     Mr. Brink relied on the misrepresentations in Defendants' monthly account statements and correspondence when choosing to maintain accounts with Defendants. He also continued to use the accounts and incur more debt on them, to Defendants' benefit, based upon Defendants' representations that they were complying with the SCRA and their Military Benefits Program.  Had he known that Defendants were charging them a higher interest rate than permitted by the SCRA or their Military Benefits Program, he would have closed accounts with Defendants and moved to another bank.

42.     Mr. Brink paid more in interest charges and fees on accounts with Defendants than should have been due under a correct application of the SCRA and the Military Benefits Program.

43.     Mr. Brink never received an accounting of the overcharged interest or improper fees. Upon information and belief, Defendants are still in possession of certain funds which were obtained as a result of the overcharged interest and improper fees.

44.     Defendants provided Mr. Brink with at least two checks indicating that they may have overcharged him under the SCRA on various interest-bearing loans. Mr. Brink was only able to cash one of these checks.  Defendants continue to possess the amount of the second check, which he could not cash because it was issued jointly to him and his ex-wife. Mr. Brink never received an accounting or similar documentation related to the checks he received, or an explanation of how Defendants calculated the overcharges or how they will determine the amount of taxable income to be reported to the Internal Revenue System.

**Plaintiff Carmin Nowlin:**

45.     Plaintiff Carmin Nowlin resides in the State of Georgia. She served our Nation since 2001, including three deployments to Iraq, most recently in 2018-2019, and in the Inactive Ready Reserves.

46.     During this period of service, Ms. Nowlin has had numerous interest-bearing accounts with Defendants, including credit cards.

47.     Defendants have provided Ms. Nowlin with interest rate and fee benefits under the SCRA and/or their Military Benefits Program.  For example, Defendants provided her with an interest rate of 4% during active duty and for a period after leaving active duty, and she has taken out debt while enjoying these benefits.

48.     Defendants failed to reduce the interest rate and waive fees as required by the SCRA and/or their Military Benefits Program.  This practice was imperceptible to Ms. Nowlin, as her monthly statements and other correspondence contained misrepresentations that he was being charged the correct interest rate.

49.     Ms. Nowlin relied on the misrepresentations in Defendants' monthly account statements and correspondence when choosing to maintain accounts with Defendants. She also continued to use the accounts and incur more debt on them, to Defendants' benefit, based upon Defendants' representations that they were complying with the SCRA and their Military Benefits Program.  Had she known that Defendants were charging them a higher interest rate than permitted by the SCRA or their Military Benefits Program, she would have closed accounts with Defendants and moved to another bank.

50.     Ms. Nowlin paid more in interest charges and fees on accounts with Defendants than should have been due under a correct application of the SCRA and the Military Benefits Program and TILA.

51.     Ms. Nowlin never received an accounting of the overcharged interest or improper fees. Upon information and belief, Defendants are still in possession of certain funds which were obtained as a result of the overcharged interest and improper fees and Defendants continue to overcharge her on a regular basis.

52.     Defendants provided Ms. Nowlin with several checks indicating that they may have overcharged her under the SCRA. She never received an accounting or similar documentation related to the checks she received, or an explanation of how Defendants calculated the overcharges or how they will determine the amount of taxable income to be reported to the Internal Revenue System.

**Plaintiff Nicholas Padao:**

53.     Plaintiff Nicholas Padao resides in Champaign, Illinois. He served our Nation since 2003, including service in the Army National Guard and a deployment to Iraq in 2018-2019.

54.     During this period of service, Mr. Padao has had numerous interest-bearing accounts with Defendants, including credit cards, auto loans, and unsecured loans.

55.     Defendants have provided Mr. Padao with interest rate and fee benefits under the SCRA and/or their Military Benefits Program. For example, Defendants provided him with an interest rate of 4% during active duty and for a period after leaving active duty, and he has taken out debt while enjoying these benefits.

56.     Defendants failed to reduce the interest rate and waive fees as required by the SCRA and/or their Military Benefits Program. This practice was imperceptible to Mr. Padao, as

his monthly statements and other correspondence contained misrepresentations that he was being charged the correct interest rate.

57.     Mr. Padao relied on the misrepresentations in Defendants' monthly account statements and correspondence when choosing to maintain accounts with Defendants. He also continued to use the accounts and incur more debt on them, to Defendants' benefit, based upon Defendants' representations that they were complying with the SCRA and their Military Benefits Program.  Had he known that Defendants were charging them a higher interest rate than permitted by the SCRA or their Military Benefits Program, he would have closed accounts with Defendants and moved to another bank.

58.     Mr. Padao paid more in interest charges and fees on accounts with Defendants than should have been due under a correct application of the SCRA and the Military Benefits Program and TILA.

59.     Mr. Padao never received an accounting of the overcharged interest or improper fees. Upon information and belief, Defendants are still in possession of certain funds which were obtained as a result of the overcharged interest and improper fees and Defendants continue to overcharge her on a regular basis.

60.     Defendants provided Mr. Padao with several checks indicating that they may have overcharged him under the SCRA. He never received an accounting or similar documentation related to the checks he received, or an explanation of how Defendants calculated the overcharges or how they will determine the amount of taxable income to be reported to the Internal Revenue System.

**General Allegations**

61.     Defendants promised Plaintiffs and other class members that they monitored the accounts of servicemembers using a SCRA-compliant program.

62.     The terms of Defendants' USAA Military Benefits Program included certain benefits that Defendants considered to be more generous than those required by the SCRA. Those terms evolved over time but were always uniform across customers at any given point in time. For example, but not by way of limitation, Defendants promised to reduce servicemembers' interest rates on pre-active duty balances to 4%; and at times Defendants promised to apply a 4% interest rate to all balances and waive fees during active duty and for a period after active duty or for a period after deployment or permanent change of station.

63.     The terms of Defendants' USAA Military Benefits Program were well documented and systematically communicated to class members; they became terms of the agreements between the parties and therefore became enforceable in contract.

64.     Defendants offered the USAA Military Benefits Program and its associated benefits to appear competitive in the consumer banking market and to retain the business of servicemembers. Plaintiffs and other class members relied on Defendants' representations regarding the USAA Military Benefits Program when deciding to maintain their accounts with Defendants and to incur more debts on those accounts. If Defendants had failed to provide this competitive program, Plaintiffs and other class members would have closed their accounts with Defendants and moved to another bank.

65.     Despite their representations to Plaintiffs and other class members, Defendants failed to comply with the SCRA and the terms of its USAA Military Benefits Program. Specifically, Defendants failed to reduce the interest rates on servicemembers' accounts as

promised and required, failed to waive fees as promised, and failed to properly calculate the debt forgiveness requirements of both the SCRA and the USAA Military Benefits Program.

66.     Defendants failed to comply with the timing requirements of the SCRA and their USAA Military Benefits Program, under which reductions in the interest rates on servicemembers' accounts are effective on the date military orders are received.

67.     Defendants did not forgive incurred interest, including certain fees and charges, as required by the SCRA and the USAA Military Benefits Program. As a result, Defendants overstated the outstanding balances on servicemembers' accounts, and unlawfully charged interest on those balances on a recurring basis.

68.     Defendants have not maintained adequate internal systems to ensure compliance with the SCRA or to meet the terms of their USAA Military Benefits Program.

69.     Defendants charged Plaintiffs and other class members with incorrect interest rates during their periods of military service that were less than 30 days, in violation of the SCRA and the USAA Military Benefits Program.

70.     Defendants' violations of the SCRA and their USAA Military Benefits Program were carried out through complex computer calculations that were not discoverable by servicemembers, as the periodic account statements and other communications received by Plaintiffs and other class members incorrectly reflected that the interest rate on servicemembers' accounts was properly reduced.

71.      These violations caused damage to servicemembers, including the miscalculation of principal, interest, payoff amounts, and improper imposition of interest, fees, and other charges.

72.     Defendants' violations of the terms of the USAA Military Benefits Program constituted a breach of their contracts with Plaintiffs and other class members.

73. In addition to violating the SCRA and the terms of their own USAA Military Benefits Program, Defendants made certain misrepresentations to Plaintiffs and other class members about their accounts that concealed and prevented Plaintiffs and class members from reasonably discovering such violations.

74. For example, on a monthly basis Defendants sent Plaintiffs and class members account statements which reflected the appropriately reduced interest rate during times of active duty and during the year after a deployment or permanent change of station, when Defendants were in fact charging significantly higher interest rates on those accounts. This conduct violated the SCRA, the Truth in Lending Act ("TILA"), and Defendants' own USAA Military Benefits Program. These higher interest rates improperly inflated Plaintiffs' and class members' outstanding balances, upon which Defendants then charged additional interest.

75. Defendants conducted an internal audit of their SCRA compliance and determined that they had systematically and repeatedly violated the SCRA and the terms of the USAA Military Benefits Program by failing to apply the required interest rate and fee reductions to servicemembers' accounts during and following times of active military service. They confirmed that these violations occurred across all product lines.

76. However, on information and belief, the audit did not cover the entire period in which Defendants overcharged military customers.

77. After Defendants discovered that they had charged servicemembers improperly high interest rates and fees during military service in violation of the SCRA and their USAA Military Benefits Program, Defendants never admitted any specific violations to Plaintiffs or other class members or provided any accounting of the overcharges.

78. Instead, Defendants sent unsolicited "remediation" checks to some servicemembers, including Plaintiffs and other class members, with accompanying correspondence that misleadingly stated that the recipient "may have" been entitled to "benefits and/or protections." The correspondence was often sent in a nondescript envelope that appeared to many servicemembers as a solicitation or "junk mail."

79. When Plaintiffs and class members contacted Defendants to inquire about the payment checks they received, they were provided scripted answers that contained misleading and false information through which Defendants intended to conceal the nature and/or extent of their misconduct.

80. Based upon the actions of other banks and Defendants' statement that the payment "may be subject to tax reporting and withholding requirements," Plaintiffs and other class members expect to receive tax forms from Defendants suggesting that at least a portion of the payment checks are taxable income. Without an accounting, Plaintiffs will have no way to determine whether the correct amounts will be reported as taxable. Without a proper accounting of Defendants' SCRA violations and "remediation" check amounts, Plaintiffs and class members are without recourse to challenge Defendants' reporting to taxing authorities.

81. Through various forms of communication, Defendants have admitted to Plaintiffs and other class members that they charged improperly high interest rates and improper fees on servicemembers' accounts during times of active duty and the year following deployments and permanent changes of station, in violation of the SCRA and their own Military Benefits Program. At the same time, these communications grossly understated the magnitude of the overcharges. For example, in a notice to their customers, Defendants explained:

> As we grew quickly over the last decade, we never wavered from our commitment to serve members. However, we did not sufficiently invest in the capabilities and

expertise necessary to meet regulatory requirements and evolving business needs . . .

Noncompliance [with the SCRA and MLA] occurred because USAA's compliance, risk management and technology capabilities, processes and expertise did not keep pace with our growth or regulatory expectations . . .

The issues relate to misapplication of benefits or protections afforded under laws like the SCRA. For example, servicemembers may not have been provided the correct interest rate benefit when they went on active duty for a period of less than 30 days. One MLA issue related to contract disclosures in three products that the Bank no longer offers. The second MLA issue related to allowing MLA covered borrowers to use remotely created checks to make payments for past-due consumer loans. We are resolving these issues and providing remediation to potentially impacted members.[1]

82.     Defendants' admissions have been confirmed by an investigation of the United States Department of the Treasury's Office of the Comptroller of Currency (the "OCC"). In a March 2019 performance evaluation, the OCC reported finding "evidence of 546 violations of the Servicemembers Civil Relief Act including failure to provide SCRA protections to military reservists, wrongful repossessions of vehicles, and the filing of inaccurate affidavits in default judgment cases. The OCC found evidence of 54 violations of the Military Lending Act for using remotely created checks to collect past due amounts from members who were covered borrowers."[2] The OCC then issued a cease and desist consent order finding that Defendant USAA Federal Savings Bank "failed to implement and maintain an effective Bank-wide Risk Management Program commensurate with the Bank's size, complexity, and risk profile"; that its "internal controls and information systems do not comply with the guidelines established in 12 C.F.R. Part 30, Appendix A"; and that it "failed to implement and maintain an effective compliance

---

[1] USAA.com, USAA BANK UPDATE: OFFICE OF THE COMPTROLLER CIVIL MONEY PENALTY Important information for USAA Bank Member, https://www.usaa.com/inet/wc/bank-notice?akredirect=true (last visited Nov. 20, 2021).
[2] OCC, Public Disclosure Community Reinvestment Act Performance Evaluation USAA Federal Savings Bank, 5 (Mar. 18, 2019).

management system that includes processes and practices designed to manage consumer compliance risk, support compliance with consumer protection-related laws and regulations, and prevent consumer harm."[3] The OCC's cease and desist consent order specifically identifies the SCRA as one of three Federal consumer financial laws USAA Federal Savings Bank needed to come into compliance with. *Id* at 9. The OCC's subsequent penalty order found that, as a result of deficiencies in risk management and information technology "the Bank en[g]aged in violations of law, including but not limited to violations of the Military Lending Act and the Servicemembers Civil Relief Act," and, by reason of that conduct "the Bank engaged in unsafe or unsound practices and violations of law, which were part of a pattern of misconduct."[4]

83.     Defendants' acts and omissions, including their failure to comply with the SCRA and their own USAA Military Benefits Program, caused damage to the Plaintiffs, including but not limited to payment of additional, unnecessary, and improper interest, charges, and fees.

84.     In addition, Defendants are still in possession of certain funds belonging to Plaintiffs and class members which were obtained as a result of the overcharged interest on servicemembers' accounts.

85.     Defendants' failure to comply with the SCRA, the TILA, and their own Military Benefits Program resulted in significant wrongful gain, based on the improperly high interest rates charged to the accounts of Plaintiffs and other class members during and after periods of active military service.

---

[3] Consent Order, In the Matter of USAA Federal Savings Bank, San Antonio, Texas, Cause No. AA-EA-2018-90 (Jan. 7, 2019).
[4] Consent Order, In the Matter of USAA Federal Savings Bank, San Antonio, Texas, Cause No. AA-ENF-2020-67 (Oct. 14, 2020).

## ALLEGATIONS AS TO DISCOVERY

86.     Due to Defendants' misrepresentations to Plaintiffs and class members and concealment of SCRA violations and overcharges, Plaintiffs and class members did not discover, and had no reasonable opportunity to discover, the violations until this year, 2021. Defendants' violations at issue were self-concealing, which is evidenced, in part, by the fact that they continued the nationwide practice of overcharging active military servicemembers for more than a decade.

87.     Some if not all the violations and breaches described herein remain ongoing. Defendants' violations of the SCRA resulted in improper inflation of the principal balances owed by Plaintiffs and class members, and subsequent monthly interest being charged on these inflated balances. Thus, each and every month in which Defendants overcharged interest on servicemembers' accounts as required by the SCRA, or failed to forgive debt that accrued as a result of this failure, constituted an ongoing violation of, *inter alia*, the SCRA.

88.     Each month, Defendants sent incorrect periodic statements to Plaintiffs and class members, constituting an ongoing violation of the SCRA, TILA, DTPA, and other laws and regulations.

89.     Defendants further violated the TILA and DTPA when they sent correspondence to servicemembers containing misrepresentations that were designed to conceal Defendants' violations of the SCRA and discourage further investigation by Plaintiffs and class members. Defendants' actions, including their misrepresentations, and failure to provide an accounting of their SCRA violations, constitute further violations of statutory and common law and have caused further damages to Plaintiffs and class members.

90.     The policies behind the SCRA, and the facts described herein, require an equitable tolling of any statute of limitations. Defendants have overcharged servicemembers for over a decade, and in many cases, the servicemembers' active-duty status hindered their ability to discover these violations. Defendants should not be allowed to retain their ill-gotten gains resulting from such improper activity.

**FIRST CAUSE OF ACTION**
**(Violation of the Servicemembers Civil Relief Act)**

91.     Plaintiffs incorporate each and every allegation contained in the preceding paragraphs as if set forth again herein.

92.     Plaintiffs, on behalf of themselves and the class, have a private right of action for violations of the SCRA pursuant to 50 U.S.C. § 4042 (formerly 50 U.S.C. App. § 597a).

93.     The SCRA, formerly known as the War and National Defense Soldiers' and Sailors' Civil Relief Act of 1940, guarantees that all debts incurred by a servicemember or servicemember reservist before being called to active duty will be reduced to an interest rate of 6% from the date of receipt of their orders, and during the ensuing active-duty period as required by 50 U.S.C. § 3937 (formerly 50 U.S.C. App. § 527). Several classes of fees and charges qualify as interest. Any interest above the 6% must be forgiven and cannot be deferred.

94.     Defendants violated the SCRA by failing to properly apply its provisions to the accounts and outstanding debt of Plaintiffs and other class members. Specifically, Defendants charged interest rates higher than 6% on the accounts of Plaintiffs and class members during active military service, and failed to forgive overcharged interest as required by the SCRA. As a result, Defendants improperly inflated servicemembers' principal balances, and subsequently charged compounded interest on those balances.

95.     Defendants were aware of the provisions and requirements of the SCRA. Defendants either knew, reasonably should have known, and/or recklessly disregarded their failure to comply with the SCRA and the exploitative and deceptive nature of their policies, procedures, and decisions.

96.     Plaintiffs incurred damages as a direct and proximate result of Defendants' violations of the SCRA. For many class members, this harm is ongoing. As a result, Plaintiffs and the class members seek relief.

## SECOND CAUSE OF ACTION
### (Violation of Military Lending Act)

97.     Plaintiffs incorporate each and every allegation contained in the preceding paragraphs as if set forth again herein.

98.     Plaintiffs have a private right of action for violations of the Military Lending Act "MLA" pursuant to 32 C.F.R. 232.9(e).

99.     The MLA's purpose "is to impose limitations on the cost and terms of certain extensions of credit to Service members and their dependents, and to provide additional protections relating to such transactions in accordance with 10 U.S.C. 987." 32 C.F.R. 232.1(b). The MLA protects servicemembers from unfair and predatory loan practices.

100.     Defendants violated the MLA by failing to have in place an effective risk compliance management program and IT risk governance program. Specifically, Defendants failed to make proper disclosures in contracts for three of their products and allowed its customers with MIL loans to use remotely created checks to make past-due payments.

101.     Defendants violated the MLA by exceeding the military annual percentage rate of interest ("MAPR") of 36 percent with their addition of improper fees and/or improper interest

rates. Defendants also failed to provide specific disclosures to Plaintiffs and other class members relating to the cost of credit.

102. Defendants were aware of the provisions and requirements of the MLA. Defendants either knew, reasonably should have known, or recklessly disregarded their failure to comply with the MLA and the exploitative and deceptive nature of their policies, procedures, and decisions.

103. Plaintiffs and other class members incurred damages as a direct and proximate result of Defendants' violations of the MLA.

104. In addition, Plaintiffs and the other class members are entitled to damages not less than $500 for each violation and attorneys' fees pursuant to 32 C.F.R. 232.9(e).

105. The MLA prohibits USAA from requiring military borrowers to submit to arbitration involving the extension of consumer credit.

### THIRD CAUSE OF ACTION
#### (Breach of Contract)

106. Plaintiffs incorporate each and every allegation contained in the preceding paragraphs as if set forth again herein.

107. Defendants developed a contractual SCRA program with Plaintiffs that Defendants implemented nationwide and across all loan types, which Defendants call their "USAA's Military Benefits Program."

108. Defendants' conduct and communications informed Plaintiffs and class members of the terms of this program, with an understanding that they would rely upon that program in managing their financial affairs while a servicemember was engaged in active military service. Defendants' Military Benefits Program was developed and offered to Plaintiffs and other similarly situated to maintain competitiveness in the banking industry and to retain the business of

servicemembers; Defendants knew that if their program was not competitive, servicemembers would move their business to another bank.

109.    USAA's Military Benefits Program either constituted an enforceable term of Defendants' existing contracts with Plaintiffs and class members and/or constituted a separate enforceable contract with Plaintiffs and other class members.

110.    In addition, Defendants' contracts with Plaintiffs and class members contain an implied covenant of good faith and fair dealing which required Defendants to deal fairly and in good faith with Plaintiffs and class members.

111.    Plaintiffs and other class members maintained their accounts with Defendants and incurred additional debt on those accounts, to Defendants' benefit, in reliance on Defendants' USAA Military Benefits Program and the purported benefits offered therein by Defendants, which were promised as competitive with those offered by other banks.

112.    The terms of Defendants' USAA Military Benefits Program evolved over time but were always uniform across customers at any given point in time. For example, but not by way of limitation, Defendants promised to reduce servicemembers' interest rates on pre-active duty balances to 4%; and at times Defendants promised to apply a 4% interest rate to all balances and waive fees during active duty and for a period after active duty or for a period after deployment or permanent change of station.

113.    Defendants offered and provided the terms in, among other things, correspondence, pamphlets, and guides such as one titled "Preparing for Deployment & Returning Home," which states: "USAA Bank goes above and beyond the SCRA benefits required by law, giving you an APR of 4% — lower than the SCRA requirements — on preexisting USAA Bank credit card and loan debt plus the chance to receive a 100% rebate of credit card finance charges if you serve in a

select, qualified military campaign." Defendants also sent Plaintiffs and class members form letters offering and stating, e.g., "USAA Savings Bank is pleased to reduce the interest rate on your existing credit card balance to 4% — a full 2% lower than required by law. This special SCRA rate will continue to apply to your existing account balance and to all future transactions until one year after you are no longer on active duty . . . This letter amends your USAA Credit Card Agreement."

114.    Defendants violated the terms of the USAA Military Benefits Program, and thereby breached their contracts with Plaintiffs and class members.

115.    Defendants charged Plaintiffs and class members more interest and fees than was permitted by the USAA Military Benefits Program. Plaintiffs, in reliance on the program terms, promises, and certain representations from Defendants, as described herein, paid the improper interest charges and fees, and Defendants currently retain those payments.

116.    As a direct and proximate result of Defendants' breach of contract as described herein, Plaintiffs and class members have been damaged in an amount to be proven at trial.

## FOURTH CAUSE OF ACTION

### (Breach of Implied Covenant of Good Faith and Fair Dealing)

117.    Plaintiffs incorporate each and every allegation contained in the preceding paragraphs as if set forth again herein.

118.    Defendants are in privity of contract with Plaintiffs and each member of the class.

119.    Defendants breached their duty of good faith and fair dealing by acting in a manner unfaithful to the purpose of the contract.

120.    Plaintiffs and class members had justified expectations that, under the contracts, Defendants would provide them all statutory and contractual benefits, comply with all applicable

federal and state statutes, create and maintain a robust SCRA compliance program, and honestly and forthrightly provide them with information needed to understand and enforce their rights.

121.    Defendants breached their duty to Plaintiffs and class members by violating the SCRA and USAA's Military Benefits Program, failing to advise eligible class members about their eligibility for statutory and contractual benefits, concealing such violations from Plaintiffs and class members, and making misrepresentations regarding the nature of their reimbursement program and the payment checks issued to Plaintiffs and class members.

122.    Defendants' breach of their duties was the direct and proximate cause of damages sustained by the Plaintiffs and the class.

**FIFTH CAUSE OF ACTION**
**(Violation of Truth in Lending Act)**

123.    Plaintiffs incorporate each and every allegation contained in the preceding paragraphs as if set forth again herein.

124.    Pursuant to 15 U.S.C. § 1637(b), monthly statements provided by "[t]he creditor of any account under an open consumer credit plan" shall include, *inter alia*:

- "The amount of any finance charge added to the account during the period, itemized to show the amounts, if any, due to the application of percentage rates," § 1637(b)(4);

- "Where one or more periodic rates may be used to compute the finance charge, each such rate, the range of balances to which it is applicable, and . . . the corresponding nominal annual interest rate," § 1637(b)(5); and

- "Where the total finance charge exceeds 50 cents for a monthly or longer billing cycle . . . the total finance charge expressed as an annual percentage rate," § 1637(b)(6).

125. Defendants violated § 1637 and, upon information and belief, other provisions of the Truth in Lending Act ("TILA") by providing monthly account statements to Plaintiffs and other class members which inaccurately reflected the interest rate that Defendants were applying to the outstanding debt of servicemembers during active military duty. In reality, Defendants applied a mathematical formula that charged interest at a rate significantly higher than that permitted under the SCRA and USAA's Military Benefits Program.

126. Plaintiffs and other class members relied on the misrepresentations contained in Defendants' monthly account statements when choosing to maintain their accounts with Defendants. Had Plaintiffs known that Defendants were charging them an illegally high interest rate in violation of the SCRA and Defendants' Military Benefits Program, or that Defendants' SCRA benefits were not competitive with those offered by other banks, they would not have incurred additional debt on their accounts but rather would have closed their accounts with Defendants and moved to another bank.

127. Defendants' violations of the TILA deceived Plaintiffs and class members, concealed Defendants' SCRA violations, and directly and proximately caused damages to Plaintiffs and the class.

128. Defendants also violated TILA's substantive limitations contained in 15 U.S.C. Sec. 1666i-1(d), resulting in the imposition of unlawful fees and interest.

129. Plaintiffs and the class are entitled to statutory and actual damages and other relief under TILA.

## SIXTH CAUSE OF ACTION
### (Negligence)

130. Plaintiffs incorporate each and every allegation contained in the preceding paragraphs as if set forth again herein.

131.    Certain actions and affirmative undertakings by Defendants, including but not limited to the creation of the USAA Military Benefits Program and remediation programs, created and obligated a duty of care owed by Defendants in implementing those programs and in dealing with Plaintiffs and class members.

132.    Defendants breached their duty to Plaintiffs and class members by violating the SCRA and the USAA Military Benefits Program, failing to implement technologies and systems to assure satisfaction of Defendants' obligations under these programs, concealing such violations from Plaintiffs and class members, and making misrepresentations regarding the nature of their reimbursement program and the payment checks issued to Plaintiffs and class members.

133.    Defendants knew, reasonably should have known, or recklessly disregarded their duty of care to Plaintiffs and class members.

134.    Defendants' negligence and breach of their duties was the direct and proximate cause of damages sustained by the Plaintiffs and the class.

## SEVENTH CAUSE OF ACTION
### (Negligent Misrepresentation)

135.    Plaintiffs incorporate each and every allegation contained in the preceding paragraphs as if set forth again herein.

136.    Defendants owed Plaintiffs and other class members a duty to provide accurate and complete information regarding the interest rates being charged on their outstanding debt during periods of active military service and the period thereafter, and the basis for certain payment checks sent to Plaintiffs.

137.    As described herein, Defendants provided certain information to Plaintiffs and other class members regarding the interest rates being charged on their outstanding debt during

periods of active military service and the period thereafter, and the basis for certain payment checks sent to Plaintiffs.

138.    Specifically, Plaintiffs' and class members' periodic account statements reflected a lower interest rate than actually charged on their outstanding debt during and after active duty, and Defendants claimed that the basis for the payment checks was that "servicemembers may not have been provided the correct interest rate benefit" in certain circumstances, when in fact Defendants had documented the use of incorrect interest rates and other overcharges.

139.    This information was false, as Defendants were actually charging Plaintiffs and class members improperly high interest rates in violation of the SCRA and USAA's Military Benefits Program, and the communications were designed to conceal the full nature of the violations.

140.    Plaintiffs and other class members suffered damage as a direct and proximate result of their reliance on Defendants' false information, as they were charged illegally high interest rates and improper fees on their outstanding debt during active duty, in violation of the SCRA.

141.    As a direct and proximate result of the Defendants' improper and negligent actions, Plaintiffs and other class members sustained an ascertainable loss as well as other damages.

## EIGHTH CAUSE OF ACTION
### (Violation of Nev. Rev. Stat. §§ 598.0903-.0999)

142.    Plaintiffs incorporate each and every allegation contained in the preceding paragraphs as if set forth again herein.

143.    Defendants' actions describe herein constitute violations of the Nevada Deceptive Trade Practices Act, Nev. Rev. Stat. §§ 598.0903-.0999 ("NDTPA").

144.    Plaintiffs have a private right of action for violations of the NDTPA. *Nev. Power Co. v. Eight Judicial Dist. Court*, 120 Nev. 948, 955 n.7 (2004) (citing Nev. Rev. Stat. § 41.600(2)).

145.    Defendants were aware of the facts which constituted a violation of the NDTPA. *See Poole v. Nev. Auto Dealership Invs.*, *LLC*, 135 Nev. 280, 284 (Ct. App. 2019).

146.    Defendants' violations of the SCRA and TILA, as described herein, constitute *per se* violations of the NDTPA.

147.    Defendants' unfair and deceptive acts were the actual and proximate cause of damage to Plaintiffs and other class members.

148.    Plaintiffs and other class members sustained ascertainable damages.  Plaintiffs and the other class members are entitled to "damages on all profits derived from the knowing and willful engagement in a deceptive trade practice and treble damages suffered by reason of the deceptive trade practice" pursuant to Nev. Rev. Stat. §§ 598.0999.  In addition, the court may "award reasonable attorney's fees and costs." *Id.*; *see also Picus v. Wal-Mart Stores, Inc.*, 256 F.R.D. 651, 657 (D. Nev. 2009).

## NINTH CAUSE OF ACTION
### (Breach of Fiduciary Duty or Special Trust)

149.    Plaintiffs incorporate each and every allegation contained in the preceding paragraphs as if set forth again herein.

150.    Defendants did not have a typical arms-length lender/borrower relationship with Plaintiffs and class members. In the unique facts of this case, Defendants took on a role of fiduciary to the Plaintiffs and the class.

151.    Alternatively, the unique relationship between Defendants and Plaintiffs and the class gives rise to a special trust under Nevada law.  *See Perry v. Jordan,* 111 Nev. 943 (Nev. 1995).

152.     The facts giving rise to the fiduciary duty or special trust include but are not limited to the following:

- Defendants specifically marketed to servicemembers, and particularly to those servicemembers being deployed overseas;

- Defendants volunteered advice to servicemembers and their families with the intent that Defendants would become their trusted advisor on financial and non-financial matters. Defendant's website, usaa.com, states, for example: "Help During Deployment. Our team of professionals can help you before, during, and after your deployment," "Military Life. Get tools and checklists to confidently navigate life in the military – from joining to leaving and all transitions in between," and solicits members to "find out" how Defendant has enhanced SCRA benefits with even lower interest rates. Defendants touted themselves as a source of trusted information for servicemembers about SCRA and other servicemember benefits.

- Plaintiffs and class members provided Defendants with documentation of their military status, which typically included overseas deployment orders, and Defendants maintained an online portal for receiving such information. Thus, Defendants solicited and received notice that Plaintiffs and class members would be deployed overseas or otherwise engaged in active duty and could not fully monitor their accounts or act in an arms-length manner with the Defendants during periods of active military service. Defendants also received such notice when Plaintiffs and class members charged certain on-base purchases in military engagement areas. Defendant's website contains many examples of Defendant's

knowledge that deployed customers are generally not able to attend to financial matters while deployed, including through a "Deployment Preparations Checklist" that Defendant makes available to its customers.

- The SCRA reflects a Congressional determination that servicemembers cannot and should not be required to protect their own financial interests while serving full time in the U.S. military. By participating in the SCRA program and specifically marketing "enhanced" benefits beyond what the SCRA provides, Defendants have acknowledged this unequal relationship and taken on fiduciary duties.

153.    Defendants have breached the fiduciary duties owed to Plaintiffs and the class and/or the special trust, which directly and proximately caused Plaintiff to suffer damages entitling Plaintiffs and the class to an accounting, restitution, and other equitable remedies.

<u>**TENTH CAUSE OF ACTION**</u>
**(Accounting)**

154.    Plaintiffs incorporate each and every allegation contained in the preceding paragraphs as if set forth again herein.

155.    Plaintiffs are entitled to an accounting either because (1) Defendants breached fiduciary duties and/or or a special trust, or (2) the accounts that will determine the amounts that Defendants owe to Plaintiffs are possessed only by Defendants and are so complex that they warrant resolution through an accounting rather than traditional discovery procedures.

156.    Accordingly, Plaintiffs and other class members are entitled to an accounting of all overcharges, as well as all assets, funds, revenues, and profits received and retained by Defendants as a result of their improper actions, as described herein.

## ELEVENTH CAUSE OF ACTION
### (Constructive Trust)

157.    Plaintiffs incorporate each and every allegation contained in the preceding paragraphs as if set forth again herein.

158.    Defendants have wrongfully obtained, and continue to retain, certain funds and profits as a result of their misconduct, which legally belong to Plaintiffs and other class members.

159.    Plaintiffs and other class members are entitled to the imposition of a constructive trust containing all assets, funds, and property derived from Defendants' wrongful acts, with Defendants serving as constructive trustees for the benefit of Plaintiffs.

## TWELFTH CAUSE OF ACTION
### (Florida Uniformed Servicemembers Protection Act)

160.    Plaintiffs bring this claim on behalf of Florida subclass.

161.    Plaintiffs incorporate each and every allegation contained in the preceding paragraphs as if set forth again herein.

162.    Defendants actions constitute a violation of Florida Statute 250.82, which provides: "In addition to any other relief or penalty provided by state or federal law, a person is liable for a civil penalty of not more than $1,000 per violation if that person violates any provision of this chapter affording protections to members of the United States Armed Forces, the United States Reserve Forces, or the National Guard or any provision of federal law affording protections to such servicemembers over which a state court has concurrent jurisdiction under."

163.    In addition to other remedies claimed herein, the Florida subclass is entitled to statutory damages under Florida Statute 250.82.

## THIRTEENTH CAUSE OF ACTION
### (Federal Declaratory Judgment Act)

164.    Plaintiffs incorporate each and every allegation contained in the preceding paragraphs as if set forth again herein.

165.    The parties have a genuine dispute over whether Defendants' actions violate the SCRA and TILA.

166.    Plaintiffs seek declaratory and injunctive relief establishing the requirement of SCRA and TILA as applied to Defendants conduct and enjoining Defendants' future violations of those statutes.

167.    The Federal Declaratory Judgment Act gives this Court the discretion to entertain a declaratory judgment action. 28 U.S.C. § 2201; *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286-87 (1995).  28 U.S.C. § 2201 provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  This Court also has the power to grant "further necessary or proper relief based on a declaratory judgment." 28 U.S.C. § 2202.

## FOURTEENTH CAUSE OF ACTION
### (Nevada Uniform Declaratory Judgment Act)

168.    Plaintiffs incorporate each and every allegation contained in the preceding paragraphs as if set forth again herein.

169.    The parties have a genuine dispute over whether Defendants' actions violate the SCRA and TILA.

170.     Plaintiffs seek declaratory and injunctive relief establishing the requirement of SCRA and TILA as applied to Defendants conduct and enjoining Defendants' future violations of those statutes.

## **PRAYER FOR RELIEF**

**WHEREFORE,** on behalf of themselves and all other persons similarly situated, Plaintiffs respectfully pray for the following relief:

a.     An Order certifying the class, appointing the named Plaintiffs and class members as class representatives and Plaintiffs' attorneys as class counsel;

b.     Factual findings that Defendants have violated the Servicemembers Civil Relief Act, the Truth in Lending Act, the Nevada Deceptive Trade Practices Act, the Florida Uniformed Servicemembers Protection Act, and other applicable statutes and rules;

c.     An award of statutory, compensatory, consequential, and punitive damages;

d.     An award of treble damages and attorneys' fees and costs pursuant to the Nevada Deceptive Trade Practices Act;

e.     An award of pre-and post-judgment interest;

f.     The imposition of a constructive trust containing all assets, funds, and property derived from Defendants' wrongful acts, with Defendants serving as constructive trustees for the benefit of Plaintiffs and class members;

g.     An Order requiring disgorgement of Defendants' ill-gotten gains to pay restitution to Plaintiffs and all members of the class;

h.     An accounting of all assets, funds, revenues, and profits received and retained by Defendants as a result of their improper actions;

i.     Declaratory and injunctive relief establishing the requirement of SCRA and TILA as applied to Defendants' conduct and enjoining Defendants' future violations of those statutes;

j.     A jury trial on all issues so triable; and

k.     Such other relief as this Court may deem just and proper.

RESPECTFULLY submitted this 24th day of November, 2021.

**ZAYTOUN BALLEW & TAYLOR, PLLC**

By:     /s/ *Matthew D. Ballew*_____
Matthew D. Ballew, NCSB # 39515
Robert E. Zaytoun, NCSB# 6942
John R. Taylor, NCSB# 43248
3130 Fairhill Drive, Suite 100
Raleigh, NC 27612
Telephone: (919) 832-6690
Facsimile: (919) 831-4793
MBallew@zaytounlaw.com
RZaytoun@zaytounlaw.com
JTaylor@zaytounlaw.com
*Local Civil Rule 83.1(d) Counsel for Plaintiffs*

**SMITH & LOWNEY, PLLC**

By:     /s/ *Knoll D. Lowney*_____
Knoll D. Lowney, WSBA# 23457
Claire Tonry, WSBA# 44497
2317 E. John Street
Seattle, Washington 98112
Telephone: (206) 860-2883
Facsimile: (206) 860-4187
Knoll@smithandloweny.com
Claire@smithandlowney.com

*Attorneys for Plaintiffs*