IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
Civil Action No. 5:21-CV-488-BO

| | |
|---|---|
| PHILIP BULLS, DEAN BRINK, CARMIN NOWLIN, NICHOLAS PADAO, and RAPHAEL RILEY *on behalf of themselves and others similarly situated*,<br><br>Plaintiffs,<br><br>vs.<br><br>USAA FEDERAL SAVINGS BANK, and USAA SAVINGS BANK,<br><br>Defendants. | **MEMORANDUM IN SUPPORT OF MOTION FOR RETURN OF INADVERTENTLY PRODUCED NON-PUBLIC OCC INFORMATION** |

Defendants USAA Federal Savings Bank and USAA Savings Bank (collectively, "Defendants") file this memorandum in support of their motion for the entry of a court order compelling the return and destruction of an inadvertently produced document constituting non-public OCC information.

## I. INTRODUCTION

Defendants inadvertently produced a confidential document to Plaintiffs. This document is a supervisory letter from the Office of the Comptroller of the Currency ("OCC") to the Board of Directors for USAA Federal Savings Bank, and it contains information that federal regulations deem non-public OCC information. Upon discovering this inadvertent disclosure, and according to applicable regulations and the terms of the Stipulated Protective Order entered in this case (Doc. 20), Defendants asked Plaintiffs to return and certify the destruction of all copies of the confidential document. However, Plaintiffs have refused to return and destroy the document, which has forced Defendants to seek relief from this Court ordering Plaintiffs to do so.

1

Non-public OCC information belongs to the OCC, the federal agency responsible for conducting reviews and providing sustained supervision of the operations, safety, and soundness of national banks and federal savings associations. Non-public OCC information does not lose its confidential and sensitive status through inadvertence or the actions of a third party, and non-public OCC information cannot be produced—much less be obtained and retained—without prior approval of the OCC. Plaintiffs do not have the OCC's express permission to obtain and retain the confidential document, a fact that has been directly communicated to Plaintiffs' counsel by the OCC. A federal court can order the production of non-public OCC information, but only in a proceeding in which the OCC has had the opportunity to appear and oppose the production. No such order exists here. Plaintiffs should be compelled to return the confidential record and certify that any copies of it have been destroyed, as required by law and the Stipulated Protective Order.

## II. BACKGROUND

Plaintiffs are in possession of a confidential two-page document defined as "non-public OCC information" that was inadvertently produced to Plaintiffs' counsel. This document, Bates-numbered as USAA-ADR-00003189-00003190 (the "Document"), is a supervisory letter from the OCC to USAA Federal Savings Bank, and it reflects the bank examiner's response and supervisory guidance to the USAA FSB Board of Directors. The Document contains a confidentiality statement, underscoring that the letter is the property of the OCC, that its contents are strictly confidential, and that any unauthorized disclosure is prohibited.[1]

---

[1] Should the Court conclude actual review of the Document's contents would be beneficial, the OCC has directed that Defendants may provide the Document for confidential *in camera* inspection.

> **Confidentiality Statement**
> This Letter is the property of the OCC, and its contents are strictly confidential. Unauthorized disclosure of the contents of this Letter, including component and composite ratings, is generally prohibited. However, when necessary or appropriate for bank business purposes, a national bank is allowed to disclose this Letter to a person or organization officially connected with the bank as officer, director, employee, attorney, auditor, or independent auditor. Disclosure may also be made to the bank's holding company and, under certain conditions, to a consultant employed by the bank. These exceptions to the general prohibition on disclosure are described in OCC regulations, 12 C.F.R. 4.37(b) (2). Any other disclosure of this Letter or its contents without the OCC's prior approval is a violation of 12 C.F.R. 4.37(b) and subject to criminal penalties in 18 U.S.C. 641 for conversion of U.S. Government property.

On May 2, 2022, Defendants inadvertently disclosed the Document to Plaintiffs as part of an electronic document production made in support of early mediation efforts. This production consisted of 3,276 documents (over 19,000 pages) and was intended to include only account documents for the named plaintiffs in the lawsuit. (*See* Ex. A.)[2] These documents were produced subject to a Stipulated Protective Order (Doc. 20), entered by the Court on April 21, 2022, in which the parties agreed that Plaintiffs could not make use of the documents for any purpose other than for mediation. (*See* Protective Order at ¶ 23 ("No party shall make any use of such information or documents for any purpose other than for the mediation or other alternative dispute resolution for which the information or documents were provided[.]")) The Protective Order requires the return or destruction of any inadvertently disclosed information or documents upon notice. (*See* Protective Order at ¶ 20 (upon notice of an inadvertent disclosure, "all receiving parties shall return the matter to the producing party [and] confirm in writing to the producing party the destruction of all such matter")).

Defendants requested the return and destruction of the Document as soon as they learned that Plaintiffs had possession of the Document. Specifically, on August 29, 2022 and thereafter, Defendants informed opposing counsel that the Document is the property of the OCC; that the OCC had not authorized Defendants to disclose the Document; and that Plaintiffs' continued

---

[2] On April 29, 2022, defense counsel confirmed to Plaintiffs' counsel that the account documents for the named plaintiffs were being produced, as reflected in the email attached as Exhibit A.

possession of the Document is in violation of OCC regulations, which specify that documents constituting non-public OCC information remain the property of the OCC, and that the OCC's rights in such property cannot be waived by the actions of a third party. *See* 12 C.F.R. §§ 4.36(d) and 4.37(d). (*See* Ex. B.)[3]

On September 1, 2022 and thereafter, Defendants also contacted the OCC to inform it of Plaintiffs' possession of the inadvertently produced Document. In an October 11, 2022 letter addressed to Plaintiffs' counsel and copied to defense counsel, the OCC stated that "[Plaintiffs'] possession of the Supervisory Letter is in violation of 12 C.F.R. § 4.37(b)." (*See* Ex. C.)[4] Correspondingly, the OCC directed Defendants to make every effort "to ensure either the return or destruction of ALL copies of the Supervisory Letter in [Plaintiffs'] possession." (*See* Ex. C) (emphasis in original).) Indeed, prior to alerting the OCC of this inadvertent disclosure, the OCC advised in an August 1, 2022 email that Plaintiffs must seek the OCC's permission to obtain or use non-public OCC information in this litigation consistent with the process set forth in the OCC's regulations, *see* 12 C.F.R. § 4.33(a), and that Defendants are "prohibited from releasing" non-public OCC information to Plaintiffs. (*See* Ex. D.)[5]

Plaintiffs have refused to follow these rules and have refused to return and destroy the Document. (*See* Ex. B.) Rather than comply, Plaintiffs' counsel takes the view that Plaintiffs are not obligated to make an administrative request to obtain or use non-public OCC information; that the Document here is not privileged; and that the OCC's interests in this Document—or any other document that may constitute non-public OCC information—are addressed in the

---

[3] A copy of the relevant meet-and-confer communications between counsel, annotated and highlighted for the Court's convenience, are attached as <u>Exhibit B</u>.

[4] A copy of the OCC's October 11, 2022 communication is attached as <u>Exhibit C</u>.

[5] A copy of the OCC's August 1, 2022 communication is attached as <u>Exhibit D</u>.

Protective Order by the "Supplemental Terms Applicable to Non-Public OCC Information." (*See* Ex. B.) These terms contain a provision that states "Defendants shall produce non-privileged, non-public OCC information[.]" (Protective Order at ¶ 26 [Doc. 20].)

Plaintiffs' position is indefensible. It contravenes federal regulations and the OCC's very communication to Plaintiffs' counsel. (*See* Ex. C.) There is no record of an administrative request by Plaintiffs to use or obtain the Document or non-public OCC information. There is no record of any prior OCC authorization for Plaintiffs to use or obtain the Document or non-public OCC information. The OCC is not a party to this case, and the Protective Order was not entered with OCC participation.

Defendants' good-faith efforts to resolve this matter have been unsuccessful. They now move this Court for relief.

### III. DISCUSSION

#### A. The Document Constitutes Non-public OCC Information

Initially, there can be no dispute that the Document falls within the definition of "non-public OCC information," and therefore is subject to the disclosure restrictions described in 12 C.F.R. §§ 4.31 et seq. The Document is not one that the OCC is required to release under the Freedom of Information Act. *Id.* at §§ 4.12(b)(8) and 4.32(b)(1). Further, the Document is "[a] record created . . . by the OCC in connection with the OCC's performance of its responsibilities, such as a record concerning supervision" of a regulated entity. *Id.* at § 4.32(b)(1).

#### B. Non-Public OCC Information is Confidential and Privileged and Cannot be Produced Without Prior OCC Approval or a Suitable Federal Court Order

Subpart C of Title 12 of the Code of Federal Regulations provides that "[w]ithout OCC approval, no person, national bank, or other entity, . . . may disclose [non-public OCC information] . . . in any manner, except: (A) After the requester has sought the information from

5

Case 5:21-cv-00488-BO   Document 45   Filed 10/13/22   Page 5 of 12

the OCC pursuant to the procedures set forth in this subpart; and (B) As ordered by a Federal court in a judicial proceeding in which the OCC has had the opportunity to appear and oppose discovery." *Id.* at § 4.37(b)(1). Federal regulations also provide that the OCC "may require any person in possession of OCC records to return the records to the OCC," and "[t]he possession by any of the entities or individual described in . . . this section of non-public OCC information does not constitute a waiver by the OCC of its right to control, or impose limitations on, the subsequent use and dissemination of the information." *Id.* at § 4.37(b)(5) and (d).

Non-public OCC information is "confidential and privileged." *Id.* at § 4.36(b). Persons who obtain non-public OCC information and keep it in violation of OCC regulations may be subject to criminal liability. *Id.* at § 4.37(b)(1)(ii); 18 U.S.C. § 641 (providing penalties for the unauthorized disclosure or use nonpublic information).

### C. Plaintiffs are Bound by the OCC's Special Disclosure Rules Governing Access to Non-Public OCC Information

Federal regulations provide a "mechanism" to process requests to obtain or use non-public OCC information. *Id.* at § 4.31(a)(1); *see also, e.g.*, *Alaska Electric Pension Fund v. Bank of America Corporation*, 2016 WL 6779901, at *5 (S.D.N.Y. Nov. 16, 2016). Plaintiffs are bound by these regulations.

To access non-public OCC information, the OCC's position—as memorialized in federal regulations and the OCC's August 12, 2003 Interpretive Letter—is that Plaintiffs must first make a written request to the OCC to seek its approval to obtain or use non-public OCC information. *Id*. at §§ 4.33 and 4.34; *see also* OCC Interpretive Letter No. 972, 2003 WL 22251441 (Aug. 12, 2003); *Raffa v. Wachovia Corp.*, 2003 WL 21517778 (M.D. Fla. May 15, 2003) (holding that the process envisioned in the federal regulations and endorsed by the federal courts is that the requester must submit the request to obtain non-public OCC information directly to the OCC).

6

In making this request, Plaintiffs must show that the information sought is (1) relevant to specifically identified issues in the litigation, (2) unavailable from other sources, and (3) that the requester has a compelling need for the requested information that outweighs both the public interest considerations in maintaining the confidentiality of the OCC information and the burden on the OCC to produce the information. *See* 12 C.F.R. § 4.33(a)(3)(iii). The OCC ordinarily responds to a request within 60 days from the date it receives a request it deems to be complete. *Id.* at § 4.35(a)(5). If the OCC denies the request, the requesting party may then attempt to seek a remedy in court. However, unless and until Plaintiffs make a written request and the OCC acts on the request, they are not entitled to possess non-public OCC information.

### D. Plaintiffs Never Obtained Permission from the OCC or this Court to Possess Non-Public OCC Information

Plaintiffs do not have authority to possess the Document. They never made a written request to the OCC to obtain or use the Document—much less any other non-public OCC information in this case—and Plaintiffs' continued possession of the Document is in direct violation of OCC regulations. *Id.* at §§ 4.36(d) and 4.37(b)(1)(ii).

Plaintiffs contend that the Protective Order entered in this case—which states "Defendants shall produce non-privileged, non-public OCC information" (Protective Order at ¶ 26)—permits the disclosure of the Document and their continued possession of it. (*See* Ex. B.)

They are mistaken. Defendants produced the Document in error. Moreover, Defendants were not authorized to produce the Document because they cannot, and could not, disclose non-public OCC information in the absence of OCC approval or a suitable court order. The Protective Order is not a suitable court order. A suitable court order under the OCC's regulations is one entered "by a Federal court in a judicial proceeding in which the OCC has had the opportunity to appear and oppose discovery." *Id.* at § 4.37(b)(1). The OCC did not have an opportunity to

7

participate in the entry of the Protective Order, nor could it as Plaintiffs never sought the information from the OCC pursuant to its well-established procedures. *See id.* at §§ 4.33 and 4.34.

While Plaintiffs may be able to obtain or use "non-privileged, non-public OCC information" as contemplated by the Protective Order after submitting a written request to the OCC and receiving its permission, the regulations make plain that the OCC's rights cannot be waived through inadvertence or the actions of a third party (such as Defendants' inadvertent production here), and that the OCC's rights to control or impose limitations on its non-public OCC information are absolute. *Id.* at §§ 4.36(d) and 4.37(d). Persons who obtain and retain possession of non-public OCC information—privileged or not—without prior OCC approval or a proper federal court order are in violation of the OCC's regulations and may be subject to the criminal penalties in 18 U.S.C. § 641.

### E. Defendants' Production of the Document was Clearly Inadvertent under the Protective Order, and Plaintiffs' Refusal to Return and Destroy it is Untenable

Notwithstanding these clear rules, Plaintiffs have refused to comply with Defendants' requests to return and destroy the Document in violation of federal regulations, the OCC's direct mandate to Plaintiffs, and also the Protective Order. Leaving aside the issue that Plaintiffs may not use the Document for a purpose other than mediation (*see* Protective Order at ¶ 23), the Protective Order requires Plaintiffs to return or destroy inadvertent disclosures (*see* Protective Order at ¶ 20), and Defendants' production of the confidential two-page document here was clearly inadvertent and unintentional.

First, Defendants took reasonable precautions to prevent inadvertent disclosures. Before producing any documents to Plaintiffs as part of early mediation efforts, Defendants undertook a multi-step process that included a linear review of documents by attorneys to identify privileged

8

or otherwise protected information, using a leading document review and production software called Relativity. In a family of documents, the Document was a "child" attached to a "parent" legal memorandum that was marked privileged and not to be produced. Pre-production controls, however—which have since been corrected—failed to exclude the Document from the production set. Only when Defendants were preparing to reproduce account related documents in response to Plaintiffs' First Set of Requests for Production of Documents did defense counsel realize that the Document had been produced in error.

Second, once the inadvertent disclosure was discovered, Defendants immediately took steps to recall the Document. Specifically, defense counsel sent an email to Plaintiffs' counsel shortly after the inadvertent production was discovered, requesting return or destruction of the Document pursuant to the Protective Order. Defendants contemporaneously alerted the OCC to the issue. Over the next few weeks, Defendants followed up with Plaintiffs in their request to recall the Document, providing additional information to support Defendants' assertion that the Document was inadvertently produced and is protected as non-public OCC information belonging to the OCC. (*See* Ex. B.)

Third, Defendants intended to include only account documents for the named plaintiffs in the lawsuit in the electronic document production in support of mediation. (*See* Ex. A.) The Document does not contain account-related material concerning Plaintiffs.

Finally, of the over 19,000 pages of documents produced as part of mediation efforts, the Document amounts to only 2 pages, which should bring the extent of the inadvertency into sharp focus. Indeed, a percentage error of just 0.1% in the degree of care that Defendants took in their review and production of documents is quite narrow.

## IV. CONCLUSION

For all of these reasons, Defendants respectfully request that this Court enter an order compelling Plaintiffs to return the produced Document and destroy all copies, granting such other and further relief the Court deems just and proper.

Dated: October 13, 2022               Respectfully submitted,

/s/F. Hill Allen
**THARRINGTON SMITH, L.L.P.**
F. Hill Allen (NC Bar #18884)
P.O. Box 1151
150 Fayetteville Street, Suite 1800
Raleigh, NC 27602-1151
Tel: (919) 821-4711
Fax: (919) 829-1583
hallen@tharringtonsmith.com
Local Civil Rule 83.1 Counsel

and

/s/Megan S. Ben'Ary
**MCGLINCHEY STAFFORD PLLC**
Daniel T. Plunkett
601 Poydras Street, Suite 1200
New Orleans, LA 70130
Tel: (504) 596-2778
Fax: (504) 910-9542
dplunkett@mcglinchey.com
La. Bar #21822

Megan S. Ben'Ary
1275 Pennsylvania Avenue NW, Suite 420
Washington, DC 20004
Tel: (202) 802-9949
Fax: (202) 217-2215
mbenary@mcglinchey.com
Va. Bar #47439

Andrew M. Albritton
601 Poydras Street, Suite 1200
New Orleans, LA 70130
Tel: (504) 596-0317
Fax: (504) 910-7970
aalbritton@mcglinchey.com
La. Bar #39780

Special Appearance Counsel

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

      I hereby certify that a copy of the foregoing was electronically filed in this case with the clerk of the court and served on this 13th day of October, 2022 through the court's CM/ECF system, which will send notification of this filing to all counsel of record.

/s/Megan S. Ben'Ary
Megan S. Ben'Ary
McGlinchey Stafford PLLC
Va. Bar #47439
Special Appearance Counsel

*Attorneys for Defendants*