**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
CASE NO. 5:21-cv-00488-BO**

| | |
|---|---|
| PHILIP BULLS, DEAN BRINK, CARMIN NOWLIN, NICHOLAS PADAO, and RAPHAEL RILEY, *on behalf of themselves and others similarly situated*,<br><br>   Plaintiffs,<br><br>   v.<br><br>USAA FEDERAL SAVINGS BANK, and USAA SAVINGS BANK,<br><br>   Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

(center, right of caption) **MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

## I.   INTRODUCTION

   Plaintiffs Phillip Bulls, Dean Brink, Carmin Nowlin, Nicholas Padao, and Raphael Riley ("Plaintiffs") filed this case on behalf of themselves and others similarly situated, alleging that USAA Savings Bank and USAA Federal Savings Bank (collectively, "USAA Bank") failed to apply reduced interest rate benefits pursuant to the Servicemembers Civil Relief Act ("SCRA"), the Military Lending Act ("MLA"), and USAA Bank's own proprietary program, among other violations of state and federal law.

   On July 2, 2024, after nearly a year of extensive settlement efforts, including three separate in-person and remote mediation sessions with two independent, well-respected national mediators, the Parties reached a settlement in principle. These negotiations followed nearly a year and a half of hard-fought litigation. The proposed Settlement Agreement and Release ("Agreement")[1]

---

[1] Capitalized terms reflect definitions from the Agreement, attached as Exhibit A.

1

provides for meaningful compensation to all members of the Class, with a Settlement Amount of approximately $64.2 million. USAA Bank denies any and all allegations of wrongdoing and liability in this case.

As Plaintiffs demonstrate below, the proposed Settlement is worthy of the Court's approval. The proposed Settlement may look familiar to the Court because it follows the settlement model this Court approved in two similar cases: *Childress v. Bank of America Corp.*, No. 5:15-cv-00231-BO ("*Bank of America*"), DE 126 (E.D.N.C. Feb. 5, 2018) (approximately $42 million settlement) and *Childress v. JPMorgan Chase Bank, N.A. et al.*, No. 5:16-cv-00298-BO ("*Chase*"), DE 359 (E.D.N.C. Oct. 1, 2020) (approximately $62 million settlement).[2]

## II.     FACTUAL AND PROCEDURAL HISTORY

### A.     Factual Background

Plaintiffs are military servicemembers who maintained credit card accounts and other loans with USAA Bank during some period of active military service since May 4, 2009. Plaintiffs' complaint alleges that these obligations were subject to the interest rate reduction protections of the SCRA, the MLA, and USAA's own proprietary fee and interest reduction program for servicemembers, and that USAA Bank failed to accurately provide these benefits to tens of thousands of servicemembers. Plaintiffs' complaint also alleges, among other things, that USAA's Extended Vehicle Protection ("EVP") and Debt Protection ("DP") products violated the MLA and that these products were useless.

In 2019 and 2020, the United States Department of Treasury, Office of the Comptroller of the Currency ("OCC") entered into a consent order with USAA Bank, finding that "the Bank

---

[2] *See* Declaration of Knoll Lowney in Support of Motion for Preliminary Approval ("Lowney Decl."), ¶¶ 4-5, Exs. 1 & 2.

engaged in violations of law, including but not limited to violations of the [MLA] and the [SCRA]." The consent order required USAA Bank to provide remediation to eligible servicemembers where necessary. In 2021, USAA Bank sent out approximately 150,000 checks to servicemembers in connection with its SCRA Remediation and approximately 109,000 checks for its MLA Remediation. Also in 2021, USAA Bank sent approximately 388,000 checks in connection with its DP Remediation and approximately 212,000 for its EVP Remediation. Plaintiffs contend that such remediation payments failed to fully compensate the Class for their damages.

**B.    Proceedings to Date**

In November 2021, Plaintiffs filed their initial complaint against USAA Bank for violations of the SCRA, MLA, Truth in Lending Act, and the Nevada Deceptive Trade Practices Act, along with claims for breach of contract, negligence, negligent misrepresentation, breach of fiduciary duty, and equitable relief. DE 1. Plaintiffs filed their first amended complaint in May 2022. DE 26.

In October 2022, Plaintiffs filed their first motion to compel, for which this Court held a hearing in January 2023. DE 47, 48, 60. This Court granted Plaintiffs' first motion to compel in February 2023. DE 64. In March 2023, Plaintiffs moved for class certification. DE 70, 71. USAA Bank responded to the motion and argued that Plaintiffs had been already compensated through the above remediations, and that Plaintiffs could not meet the requirements of Federal Rules of Civil Procedure 23(a) and 23(b). DE 95. USAA Bank also moved to strike the testimony of one of Plaintiffs' experts. DE 92. In April 2023, Plaintiffs filed their second motion to compel and for sanctions. DE 81, 82. After all of these motions were fully briefed, the Parties agreed via joint motion to stay the Court's consideration of the motions so they could pursue mediation. DE 113; *see also* DE 122 (granting stay). USAA Bank also later filed three dispositive motions in August

2023. DE 114, 118, 120. First, USAA Bank filed a Motion for Partial Summary Judgment on Plaintiffs' CARD Act Claim, arguing that the claims were barred under the statute of limitations, and alternatively, USAA Bank's rate changes were authorized under an exception to the CARD Act. Second, USAA Bank filed a Motion to Dismiss Plaintiffs' SCRA Claims for lack of standing. Third, USAA Bank filed a Motion to Dismiss or for Judgment on the Pleadings on Plaintiffs' MLA Claim for lack of standing.

In addition to motions practice, the Parties have conducted extensive discovery throughout this litigation. Plaintiffs propounded discovery requests on USAA Bank including interrogatories and requests for production, and the Parties engaged in several discovery dispute exchanges. DE 49-1, 3, 7, 8; Lowney Decl., ¶ 13-14. Plaintiffs received and reviewed approximately 24,000 documents from USAA. Lowney Decl., ¶ 14. Plaintiffs also deposed three USAA representatives who submitted declarations in response to Plaintiffs' motion for class certification, including a Director of Business Intelligence Analytics in Bank Technology and Data, a USAA Bank financial consultant for the SCRA Remediation, and the Assistant Vice President of Product Management for Consumer Lending. *Id.*

USAA Bank also propounded discovery requests on all of the named Plaintiffs, to which they responded. *Id.*, ¶ 24. Following Plaintiffs' motion for class certification, which was supported by database expert Arthur Olsen, USAA Bank deposed Plaintiffs and Mr. Olsen in May 2023. *Id.*, ¶ 14.

**C.    Mediation**

In February 2022, the Parties began exploring the possibility of mediation and scheduled the first mediation session for June 2022. Lowney Decl., ¶ 15. However, after the Parties could not agree on what information USAA Bank was to provide prior to that session, the mediation was cancelled. *Id.*

4

Then, in June 2023 after the motions practice described above, the Parties attended an in-person mediation with retired federal district court Magistrate Elizabeth Laporte in San Francisco. *Id.*, ¶ 16. Judge Laporte successfully mediated a similar case *Childress v. Chase*, *id.*, which settlement this Court approved. *Id*. After the Parties' mediation efforts with Judge Laporte reached an impasse, the parties agreed to try again with a different mediator. *Id.*, ¶ 16. The second mediation took place in January 2024 with retired federal district court Judge Layn Phillips, who previously mediated another similar case, *Childress v. Bank of America*, which settlement this Court also approved. *Id.*, ¶ 17. A portion of the monetary component of the settlement was resolved via a mediator's proposal from Judge Phillips after the second session. *Id*. The Parties continued to negotiate the remaining terms through July 2, 2024, when, during a third mediation session with Judge Phillips's office, the Parties executed a term sheet. *Id*

**D.    Proposed Settlement Agreement and Release**

**1.    Settlement Class Definition**

The Settlement defines the Class as follows:

> All USAA Bank Customers who (1) received a remediation check as a result of the Servicemember Civil Relief Act Lookback Review for the period of March 31, 2013 through March 13, 2019 ("SCRA Remediation") or the Military Lending Act Remediation for the period of October 3, 2016 through October 1, 2018 ("MLA Remediation"), or (2) were identified to receive remediation based upon the SCRA Remediation, the MLA Remediation, the Extended Vehicle Protection Remediation for the period of July 12, 2010 through June 30, 2021 ("EVP Remediation"), or the Debt Protection Remediation for the period of May 4, 2009 through July 31, 2021 ("DP Remediation"), but did not successfully cash or deposit such remediation payment.

Exhibit A at ¶ 6.

Unlike many other consumer class action cases, the persons in this settlement class can be identified from USAA Bank's business records. USAA Bank has informed Plaintiffs that the class size is approximately 210,000, and USAA Bank will provide the class data to the Administrator.

5

Lowney Decl., ¶ 19. The Settlement Amount will be directly and automatically distributed to the Class Members who do not opt out, without a claims process, as discussed further below.[3]

### 2. Relief to the Class

The proposed Settlement provides approximately $64,200,000 in monetary relief. Exhibit A at ¶ 56.

From that Settlement Amount, proceeds payable to the Class Members are net of: (a) Administrative Costs; (b) Service Awards to the Class Representatives (subject to approval); and (c) Fee and Expense Award (subject to approval). Ex. A at ¶¶ 30, 100.

The plan for distribution of net proceeds to the Class Members provides for an iterative process set forth in the proposed Distribution Plan. Ex. A to Settlement Agreement. In sum, the Net Settlement Amount will be distributed to Class Members as follows:

The first distribution[4] will be paid to Class Members who were identified as eligible to receive a remediation payment for the SCRA, MLA, EVP, and/or DP Remediations, but who did not successfully deposit that refund. These payments will be in the amount USAA Bank previously calculated.

Next, the Net Settlement Amount will be used to pay an additional $50 per applicable account to each Class Member whom USAA Bank previously sent an SCRA or MLA remediation payment. The remainder of the Net Settlement Amount will then be distributed *pro rata* to Class Members who were previously sent a remediation payment pursuant to the SCRA Remediation.

---

[3] *See* Distribution Plan, Ex. A to Settlement Agreement.
[4] As of June 18, 2024, the precise number was $33,402,833.59, however, Defendant will continue to service Class Members' requests to deposit or reissue remediation payments until the date of entry of the Preliminary Approval Order, which may slightly reduce this number.

After this initial class-wide distribution and reminder mailings, the value of any uncashed settlement payments, net of any amount which must be escheated pursuant to the distribution plan, will be redistributed *pro rata* to those Class Members who successfully received a first-round payment in excess of $250, in proportion to the payments made in the initial distribution.

Finally, after the second distribution, the remainder of any Net Settlement Amount will be distributed to cover additional Administrative Costs, if any, and then to honor any untimely requests for reissuance of settlement payments to the extent of available funds. If any Net Settlement Amounts remain, they will be distributed as *cy pres* to Court-approved charitable organizations providing services to servicemembers and veterans.

The Distribution Plan was carefully designed to help servicemembers receive their distributions and to maximize the amount of the Net Settlement Amounts ultimately received by Class Members. As one notable example, a significant portion of the settlement will be deposited directly into the bank accounts of Class Members.

### 3. Notice and release

The Parties' proposed Settlement provides for direct notice to Class Members, the best practicable notice under the circumstances. Lowney Decl., ¶ 22; Ex. A at ¶ 67. The Parties' Settlement proposes that well-known and experienced class action administrator Epiq Class Action and Claims Solutions ("Administrator") will supply administration services for the notice and distribution of funds, as further outlined in the Settlement Agreement. Decl. of Cameron Azari ("Azari Decl."), ¶ 9.

Further, the Administrator will establish a settlement website where the Notice of Class Action Settlement ("Notice") and key documents will be available. Azari Decl., ¶ 20; Ex. A at ¶ 63.b. Class Counsel's websites will include links to the settlement website. Lowney Decl., ¶ 22. The costs of settlement administration and notice will be paid from the Settlement Amount. Ex. A

at ¶ 91. Prior to the final approval hearing, the Administrator will provide to Class Counsel and Counsel for USAA an affidavit confirming that Notice has been provided as set forth in the Settlement Agreement and ordered by the Court, which will be filed with the Court. Azari Decl., ¶ 34; Ex. A at ¶ 70.

The proposed Notice describes the material terms of the Settlement and that financial awards will be distributed automatically (without a claims process). Ex. A at Ex. D and E. The Notice also describes the procedures for members of the Class to exclude themselves from the Settlement or to provide comments in support of or in objection to it. *Id*. Any member of the Class who wishes to be excluded from the Settlement need only opt-out by making a timely request. *Id*. The procedures for opting out are those commonly used in class action settlements; they are straightforward and plainly described in the Notice. *Id.*; Ex. A at ¶ 73-77. Additionally, the Settlement provides that if opt-outs exceed 5% of the Class, then USAA Bank will have the option to terminate the Settlement. Ex. A at ¶ 108.

If the Court grants final approval of the Settlement following notice, and after the period for opt-out requests and objections expires, then all Class Members who have not excluded themselves from the Class will be deemed to have released all covered claims, as defined in the Agreement, against Defendants. *Id*. at ¶ 103.

### 4. Service Awards and Fee & Expense Award

Subject to Court approval, the Parties have agreed that each of the named Plaintiffs should receive an award of $20,000 for their service as Class Representatives in this matter.[5] As in

---

[5] These amounts are reasonable, representing only 0.15% of the gross settlement amount. *See DeWitt v. Darlington Cty.*, 2013 U.S. Dist. LEXIS 172624 (D.S.C. Dec. 6, 2013) (approving incentive payments which represented 3.33% of the gross amount of the settlement with the largest amount to any individual named plaintiff representing 1.11% of the gross settlement amount); *Faile v. Lancaster Cty.*, 2012 U.S.

*Childress v. JPMorgan Chase*, wherein this Court awarded the original class representatives $25,000 service awards, the named Plaintiffs here were subject to lengthy depositions and responded to voluminous discovery requests. Lowney Decl. ¶ 24.

The Class Representatives have assisted counsel in providing detailed, often cumbersome records of their military service, their applications for SCRA benefits, as well as their interactions with USAA related not only to securing SCRA and MLA benefits from USAA Bank, but also investigating the remediation checks received and the sufficiency and tax implications thereof. *Id.* ¶ 24. The Class Representatives also assisted in reviewing pleadings, consulting with counsel during the course of this litigation, monitoring the course of this case, and consulting with counsel regarding the proposed terms of Settlement. Lowney Decl., ¶ 24.

Following negotiation of the substantive settlement terms, the Parties came to agreement that Class Counsel may request 27.5% of the Settlement Amount for a Fee & Expense Award through a separate motion to be filed prior to the Final Approval Hearing. Ex. A at ¶¶ 22, 96.

## III.  ARGUMENT

### A.  The Court should grant preliminary approval of the proposed Settlement.

Rule 23(e) of the Federal Rules of Civil Procedure governs settlement of class action lawsuits and provides that a "class may be settled, voluntarily dismissed, or compromised only with the court's approval."

Approval of a class-action settlement generally proceeds through two steps, with notice to the class in-between.[6] First, the Court determines whether to grant preliminary approval of the

---

Dist. LEXIS 189610 (D.S.C. Mar. 8, 2012) (approving incentive awards of $18,000 for each lead plaintiff and $9,000 for each of the other named plaintiffs).

[6] *See* Manual for Complex Litigation ("Manual") § 13.14, at 173 (4th ed. 2004) ("This [approval of a settlement] usually involves a two-stage procedure. First, the judge reviews the proposal preliminarily to determine whether it is sufficient to warrant public notice and a hearing. If so, the final decision on approval

9

proposed settlement and preliminarily certify a class. If so conditionally approved and certified, the Court then directs that notice and an opportunity to object or opt-out of the preliminarily approved settlement be provided to the class. *E.g., McLaurin v. Prestage Foods, Inc.*, 271 F.R.D. 465, 469 (E.D.N.C. 2010). Second, the Court determines whether final approval of the settlement is warranted.

The "standard for conditional certification is fairly lenient and requires 'nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan.'" *McLaurin*, 271 F.R.D. at 469 (quoting *Thieseen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1102 (10th Cir. 2001) (further citation omitted)). Unless the Court's initial examination "disclose[s] grounds to doubt its fairness or other obvious deficiencies," the Court should order that notice of a formal hearing be given to settlement class members under Rule 23(e). Manual § 21.633, at 321-22.

Because the Settlement in this matter passes the standards for this first step in the approval process—consideration of preliminary approval—Plaintiffs, with the agreement of USAA Bank, ask the Court to grant their request for preliminary approval of the proposed Settlement.

1. **This Settlement meets the standards for preliminary approval.**

There exists a "strong judicial policy in favor of settlements, particularly in the class action context." *Hall v. Higher One Machines, Inc.*, No. 5:15-CV-670-F, 2016 U.S. Dist. LEXIS 131009, at *5 (E.D.N.C. Sep. 26, 2016) (quoting *In re PaineWebber Ltd. P'ships Litig.*, 147 F.3d 132, 138 (2d Cir. 1998)). At the stage of preliminary approval, the Court will generally assess (1) whether

is made after the hearing."); *see also id.*, § 21.632, at 320 ("Review of a proposed class action settlement generally involves two hearings. First, counsel submit the proposed terms of settlement and the judge makes a preliminary fairness evaluation….") (footnote omitted); Alba Conte & Herbert Newberg, Newberg on Class Actions ("Newberg") § 11.25, at 38-39 (4th ed. 2002) (noting same two-step process is the norm).

the proposed settlement is the product of genuine, informed, and non-collusive negotiation; (2) whether the proposed settlement is within the range of reasonableness; (3) whether there are no obvious deficiencies; and (4) whether the agreement reflects overall fairness and does not favor certain members of the class. NEWBERG § 11:25 (4th ed. 2002); *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 159 (4th Cir. 1991) (a court at this stage asks whether the proposed settlement was "the . . . result of good-faith bargaining at arm's length . . .").

### a.     The Settlement is the product of well-informed, arms-length negotiation.

The Court must ensure, as the Fourth Circuit has articulated, that the proposed settlement "was reached as a result of good-faith bargaining at arm's length, without collusion." *Jiffy Lube Sec. Litig.*, 927 F.2d at 159. Indeed, "in cases in which discovery has been substantial and several briefs have been filed and argued, courts should be inclined to favor the legitimacy of a settlement." *In re Mills Corp. Sec. Litig.*, 265 F.R.D. 246, 254 (E.D. Va. 2009) (citing *In re MicroStrategy, Inc. Sec. Litig.*, 148 F.Supp.2d 654, 664 (E.D. Va. 2001)).

In this case, the proposed Settlement comes after nearly three years of litigation and negotiations between experienced class action counsel, including a team of plaintiffs' law firms with substantial class action litigation experience, and a large, experienced defense firm. Lowney Decl., ¶¶ 4-10, Ex. 4; Declaration of Shayne Stevenson in Support of Motion for Preliminary Approval ("Stevenson Decl."), ¶ 6-9. The course of this litigation has included: discovery motions by both Plaintiffs and USAA Bank, including Plaintiffs' motion to compel which the Court granted on February 16, 2023, DE 64, and Plaintiffs' second motion to compel and for sanctions, which was fully briefed by both parties; extensive discovery including significant document productions and depositions of both Parties; Plaintiffs' motion for class certification which was fully briefed by both parties; three dispositive motions filed by USAA Bank; and finally, three mediation

sessions over the past year. Lowney Decl., ¶ 13-17. After the Parties' third mediation session with the Parties' second mediator, the Parties reached a resolution. *Id*. at ¶ 17.

Given the extensive litigation that has taken place and the multiple negotiation sessions with experienced mediators over the course of a year, Class Counsel were well-situated to evaluate the strengths and challenges of Plaintiffs' case. *Id*.; Stevenson Decl., ¶ 3, 4, 6. The Settlement at issue is the result of long, hard-fought, adversarial work, such that it is worthy of preliminary approval by the Court. *See In re Mills Corp. Sec. Litig*., 265 F.R.D. at 254; *and see, e.g., In re Toys "R" Us Antitrust Litig.*, 191 F.R.D. 347, 352 (E.D.N.Y. 2000) ("Most significantly, the settlements were reached only after arduous settlement discussions conducted in a good faith, non-collusive manner, over a lengthy period of time, and with the assistance of a highly experienced neutral mediator . . .").

> ### b. The Settlement is within the range of reasonable resolutions for this case.

At the preliminary approval stage, the Court asks whether there is a probability that the proposed settlement could be finally approved and, if so, then orders notification to the class. *See Horton v. Merrill Lynch, Pierce, Fenner & Smith*, 855 F. Supp. 825, 827 (E.D.N.C. 1994). Courts "have recognized that settlements, by definition, are compromises which need not satisfy every single concern of the plaintiff class, but may fall anywhere within a broad range of upper and lower limits." *South Carolina Nat'l Bank v. Stone*, 139 F.R.D. 335, 339 (D.S.C. 1991) (internal quotations and citation omitted).

This is a fair settlement given the arguments that USAA Bank has raised. USAA Bank's dispositive motions attacking Plaintiffs' SCRA and MLA claims question the existence and extent of Plaintiffs' damages, which, if accepted by the Court, could foreclose much or all of the recovery. DE 119, 121. For example, USAA Bank argued that the Fourth Circuit's recent decision on the

scope of the MLA narrows or eliminates Plaintiffs' MLA claims. *See* DE 121 at 19 (citing *Davidson v. United Auto Credit Corp.*, 65 F.4th 124 (4th Cir. 2023)). And USAA's motion for summary judgment on Plaintiffs' CARD Act claim raises issues of first impression for any court. DE 116. Thus, while Plaintiffs believe they have strong defenses to all of these arguments, they nonetheless pose some risk to the Class. Furthermore, if Plaintiffs were to establish USAA Bank's liability, USAA Bank would likely argue it is entitled to an offset based upon its various remediations, and if the Court were to side with USAA Bank on this issue, it would likely result in far less recovery for the Class than provided by the proposed Settlement, if any.

The issue of the Plaintiffs' damages and many other contested issues were fully presented to and argued before both mediators. In turn, both mediators helped the Parties to quantify their risks to reach the proposed Settlement.

Ultimately, after taking into account the risk, "expense, complexity, and likely duration of further litigation," Plaintiffs and their experienced counsel, with the aid of the second mediator, Judge Phillips and his team of assistant mediators, were able to reach a settlement that provides substantial relief to the Class. *Burden v. SelectQuote Ins. Servs.*, No. 10-cv-05966 SBA, 2013 U.S. Dist. LEXIS 41522, at *7 (N.D. Cal. Mar. 18, 2013) (citation omitted).; Lowney Decl., ¶ 25; Stevenson Decl., ¶ 7.

With respect to the monetary component of the Settlement, the approximately $64,200,000 Settlement Amount is substantial in light of the above-stated risks, together with the risk that, ultimately, the Court may rule that USAA Bank is entitled to a substantial offset and a jury could find no liability or award no damages, or less in damages, should the case have proceeded to trial.

In sum, the Settlement at bar falls well within the range of possible approval. For this reason, too, the Court should grant preliminary approval.

### c. There are no obvious deficiencies in this proposed Settlement.

Furthermore, the proposed Settlement bears no obvious deficiencies. There are no patent defects that would preclude its approval by the Court, such that notifying the Class and proceeding to a formal fairness hearing would be a waste of time. *See* Newberg § 11:25 (4th ed. 2002) (referring to the Court's inquiry as to, *inter alia*, "obvious deficiencies"). Respectfully, an examination of the Settlement will reveal no apparent unfairness such as "unduly preferential treatment of a class representative or segments of the Settlement Class, or excessive compensation for attorneys." *See In re Zurn Pex Plumbing Prods. Liab. Litig.*, No. 08-MDL-1958 ADM/AJB, 2012 U.S. Dist. LEXIS 149738, at *18 (D. Minn. Oct. 18, 2012) ("There are no grounds to doubt the fairness of the Settlement, or any other obvious deficiencies, such as unduly preferential treatment of a class representative or segments of the Settlement Class, or excessive compensation for attorneys.").

As discussed below, the proposed Settlement gives no preference to named Plaintiffs or other particular members of the Class. The proposed 27.5% Fee & Expense Award, to be addressed further by separate motion and subject to separate Court approval, is reasonable, common, and not excessive, especially in light of the years of extensive litigation by lawyers who have advanced significant costs and not received any compensation because the matter is being litigated on a fully contingent basis. As this Court noted when awarding attorneys' fees equivalent to 30% of the settlement amount in *Childress v. Chase*, "[m]any courts in the Fourth Circuit have held that attorneys' fees in the amount of 1/3 of the settlement fund is reasonable." *Childress v. Chase,* No. 5:16-cv-00298-BO, DE 360 (E.D.N.C. Oct. 1, 2020) (Lowney Decl., Ex. 3).[7]

---

[7] *See also, e.g.,* Newberg § 15:73 (5th ed. 2016) (noting that a "33% figure provides some anchoring for the discussion of class action awards [to counsel]" and that "many courts have stated that . . . fee award in class actions average around one-third of the recovery."); Theodore Eisenberg & Geoffrey Miller, *Attorney Fees*

### d. The Settlement favors no members of the Class and gives no preferential treatment to anyone.

The proposed Settlement provides a cash benefit to all Class Members commensurate with the strength of their individual claims in the case. Ex. A at Distribution Plan. There is no preferential treatment of Class Members or segments of the Class. All Class Members, including Class Representatives, are treated fairly based upon objective criteria relating to their accounts and any previous remediation(s) received from USAA Bank.[8]

The proposed method of distribution begins by providing $33,402,833.59 to Class Members who were identified as being eligible to receive a Remediation Payment for the SCRA, MLA, EVP, or DP Remediations but who did not previously successfully cash or deposit that Remediation Payment. Ex. A at Distribution Plan. As of the date of filing, USAA estimates that nearly half of these payments will be made via direct deposit, ensuring the funds do not go undeposited again.[9]

Next, the Net Settlement Amount will be used to pay each of the Class Members who was previously sent an SCRA or MLA remediation payment an additional payment of $50 per applicable account. The remainder of the Net Settlement Amount will then be distributed *pro rata* to Class Members who were previously sent a remediation payment pursuant to the SCRA Remediation.

---

*in Class Action Settlements: An Empirical Study*, 1 J. of Empirical Legal Studies, 27, 31, 33 (2004) (finding that courts consistently award between 30-33% of the common fund); *In re Rite Aid Corp. Sec. Litig*, 146 F. Supp. 2d 706, 735 (E.D. Pa. 2001) (reviewing 289 class action settlements and finding an "average [of] attorney's fee percentage [of] 31.71%" and a median value of roughly one-third).

[8] As for incentive awards of $20,000 for each of the Class Representatives, such awards are supported by precedent and also by the attention that these individuals have devoted to this matter, including, variously, by way of assisting with the drafting of complaints, consulting with counsel during the course of this litigation, responding to discovery and having depositions taken, monitoring the course of this case, and consulting with counsel regarding proposed terms of settlement. *See* Lowney Decl. at ¶ 24.

[9] This is number is subject to change as Class Members could close or change ownership of an account for which direct deposit is available prior to any settlement distribution.

After this initial class-wide distribution and reminder mailings, the value of any uncashed settlement payments, net of any amount which must be escheated pursuant to the distribution plan, will be redistributed *pro rata* to those Class Members who successfully received a first-round payment in excess of $250, in proportion to the payments made in the initial distribution.

Finally, after the second distribution, the remainder of any Net Settlement Amount will be distributed to cover additional Administrative Costs, if any, and then to honor any untimely requests for reissuance of settlement payments to the extent of available funds. If any Net Settlement Amounts remain, they will be distributed as *cy pres* to a Court-approved charitable organizations providing services to servicemembers and veterans.

Settlement allocations with a base amount to be distributed *per capita* with additional amounts distributed *pro rata* are commonplace and have long been widely recognized as an appropriate means of distributing class action settlement funds. *See, e.g., In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 341–42 (N.D. Ga. 1993) (holding that allocation where "the base fund is to be divided among all claimants on a per capita basis, . . . [with an additional distribution] to be divided pro rata based on size of claims. . . provide[s] a meaningful recovery to all class members [and] is 'rationally based on legitimate considerations.'") (quoting *Holmes v. Continental Can Co.*, 706 F.2d 1144, 1148 (11th Cir. 1983)).

At each stage, to the extent possible and as requested by Class Members, payments will be distributed through electronic means and for those who received payment via check after those checks are distributed, the Administrator will send reminders and reissue checks as necessary. These procedures will serve to maximize the number of Class Members who receive settlement payments.

16

### 2. The proposed class meets the *Amchem* requirements for certification of a settlement class.

In *Amchem Products v. Windsor*, 521 U.S. 591, 617 (1997), the Supreme Court confirmed the propriety, and recognized the necessity, of settlement class certification in matters such as this one, where class members are readily identifiable, and where there are relatively small economic damages per class member. As the court put it:

> The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor.

*Id*. (*quoting Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997).

Here, there is one underlying commonality among the class of USAA members at issue—each had an account subject to interest reductions that Plaintiffs allege were not provided by USAA Bank, an alleged course of conduct common to all class members. This is the kind of class action settlement endorsed in *Amchem*. Without this class action and settlement, most class members would be "without effective strength to bring their opponents into court at all." *Id*. In a situation such as this, where the proposed class seeks to recover in settlement only economic damages (as distinct from a class or classes seeking individualized personal injury and future-injury damages), settlement class certification is eminently proper. Indeed, since many members of a military class cannot take time off of active duty to bring an individual action, a class action settlement is likely the only way to obtain relief for these servicemembers.

### B. Because it satisfies the requirements of Rule 23, the proposed class should be certified for settlement purposes.

"Under Rule 23(a) of the Federal Rules of Civil Procedure, a party seeking class certification, whether for settlement or litigation purposes, first must demonstrate that: '(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or

fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.'" *Berry v. Schulman*, 807 F.3d 600, 608 (4th Cir. 2015) (quoting, in part, Fed. R. Civ. P. 23(a)), *cert. denied*, 137 S. Ct. 77 (2016).

In addition, it must be established that the action is maintainable under one of the subparts of Rule 23(b)—here, the Rule 23(b)(3) requirements of predominance and superiority are also satisfied by the proposed settlement class. *Amchem*, 521 U.S. at 614.[10]

This assessment is supported by the Court's two prior class certification orders in the similar cases *Childress v. Chase* and *Childress v. Bank America*. *Childress v. Chase*, No. 5:16-CV-298-BO, 2019 U.S. Dist. LEXIS 110396, *34 (E.D.N.C. July 2, 2019); *id.* at *22 (noting "similar litigation in this Court against Bank of America, in which the matter was settled, class was certified, and class counsel was found to be adequate"). In *Chase* the Court examined the relevant issues in detail and found *inter* alia:

- [T]he claims of the putative class representatives are common and typical of the claims of the class. The fact that each of the named class plaintiffs has received and deposited remediation payments does not change this analysis."

- "Plaintiffs have satisfied their burden as to the adequacy of the proposed class representatives representation. . . . Proposed class counsel is also adequate."

- "[I]ndividual issues will [not] predominate any inquiry into plaintiffs' SCRA claim, . . . in large part because Chase has already engaged in such an inquiry when it conducted its remediation program."

---

[10] Though not an express requirement of Rule 23, the proposed class is also readily ascertainable such that it is administratively straight-forward in this case to identify class members with objectively verifiable account information from USAA Bank. Lowney Decl., ¶ 19.

- "[P]laintiffs have sufficiently demonstrated that the general question of whether [Defendants] breached their SCRA contract terms is a question that can be decided on a class-wide basis."

- "[N]egligence and fiduciary duty claims all raise issues that are common to the class."

- "[C]lass litigation is the superior method for litigating the plaintiffs' claims."

- "In sum, plaintiffs have carried their burden to show that certification of a class action is appropriate."

*Chase*, 2019 U.S. Dist. LEXIS 110396, *20–33.

The Court's certification decision prevailed over Chase's appeal to the Fourth Circuit. *JPMorgan Chase & Co. v. Childress*, No. 19-281, 2019 U.S. App. LEXIS 24846 (4th Cir. Aug. 20, 2019). Given the similarity of the three cases, and for the same reasons previously accepted, the Court should readily certify the class for settlement purposes here.

### 1. The proposed settlement class satisfies each requirement of Rule 23(a).

#### a. Plaintiffs satisfy the numerosity requirement—there are tens of thousands of class members.

USAA Bank's records show there are approximately 210,000 members of the proposed settlement class, which easily satisfies Rule 23's numerosity requirement. *Romero v. Mountaire Farms, Inc.*, 796 F. Supp. 2d 700, 713 (E.D.N.C. 2011) (finding that a "class of approximately 2,000 members…easily satisfies the numerosity requirement of Rule 23(a)(1)."); Newberg § 3.5 (4th ed. 2002) ("In light of prevailing precedent, the difficulty inherent in joining as few as 40 class members should raise a presumption that joinder is impracticable, and the plaintiff whose class is that large or larger should meet the test of Rule 23(a)(1) on that fact alone.").

### b. Plaintiffs satisfy the commonality and typicality requirements for purposes of settlement.

As this Court has noted, "[t]he requirements for typicality and commonality often merge." *Romero*, 796 F. Supp. 2d at 714 (citing *Kidwell v. Transp. Commc'ns Int'l Union*, 946 F.2d 283, 305 (4th Cir. 1991)). Rule 23(a) "requires only that resolution of the common questions affect all or a substantial number of the class members." *Brown v. Nucor Corp.*, 576 F.3d 149, 153 (4th Cir. 2009) (further citation omitted). "Typicality requires a showing that the 'representative's interests will be aligned with those of the represented group, and in pursuing his own claims, the named plaintiff will also advance the interests of the class members.'" *Chase*, 2019 U.S. Dist. LEXIS 110396, *18–19 (citing *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1082 (6th Cir. 1996)).

Plaintiffs here allege that common practices by USAA Bank violated the SCRA, the MLA, and its own proprietary program by not providing reduced interest rate benefits to military family borrowers and by not providing required disclosures. DE 26 (First Amended Complaint or "FAC") at ¶¶ 97-110. Similarly, the named Plaintiffs' claims are typical of the class because Plaintiffs allege they are the product of the same course of conduct and that they suffered the same type of injury. FAC ¶¶ 92–131. Thus, Plaintiffs have the same legal claims as members of the class they seek to represent and must satisfy the same legal elements that other class members must satisfy.

As this Court noted in *Chase*, "where there are consumer claims based upon the issuance of form letters, such claims are 'well-suited to disposal by class action,'" and "Class action resolution is further appropriate where claims are based on form contracts and firmwide policies." *Chase*, 2019 U.S. Dist. LEXIS 110396 at *17 (quoting *Woodard v. Online Info. Servs.*, 191 F.R.D. 502, 505 (E.D.N.C. 2000)). This case similarly revolves around issuance of form letters, form contacts, and firmwide policies. FAC at ¶¶ 93–95, 107–118, 122–127, 152, 158. This Court found

20

the typicality and commonality requirements to be met in *Chase* and should do so again here. *Chase*, 2019 U.S. Dist. LEXIS 110396 at *17-19.

        **c.      Plaintiffs satisfy the requirement to adequately represent the interests of the settlement class.**

Finally, Rule 23(a)(4) requires a determination that Plaintiffs "will fairly and adequately represent the interests of the class." In making this determination, courts must confirm that: (1) plaintiffs' counsel are "qualified, experienced and generally able to conduct the proposed litigation," and (2) the named plaintiffs are "members of the class they purport to represent, and their interests [are] not in conflict with those of other class members." *McLaurin*, 271 F.R.D. at 476 (quoting *Eisen v. Carlisle & Jacquelin*, 391 F.2d 555, 562 (2d Cir. 1968) *vacated on other grounds*, 417 U.S. 156 (1974)); *Romero*, 796 F. Supp. 2d at 715 (citing *Amchem*, 521 U.S. at 625-26).

Taking the second factor first, Plaintiffs' claims are co-extensive with members of the putative class. Indeed, they claim to "possess the same interest and suffer the same injury shared by all members of the class [they] represent." *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 216 (1974); *see, e.g.,* FAC ¶¶ 92–131. Each named Plaintiff has the same interest in establishing USAA Bank's liability, as each alleges to have been injured in the same manner as the rest of the class, by paying excessive interest and fees on their loans. *See, e.g.,* FAC at ¶¶ 107–108, 122, 125–126. There is no conflict among them.

Also, each named Plaintiff has agreed to assume the responsibility of representing the Class, and each has made him or herself available to do so, including by way of assisting with the drafting of complaints, helping to prepare initial disclosures, consulting with counsel during the course of this litigation, monitoring the course of this case, responding to discovery and having

their depositions taken, and consulting with counsel regarding proposed terms of settlement. Lowney Decl., ¶ 24.

Second, as to the qualification and experience of counsel, as discussed and referenced in the declarations of counsel and as illustrated in the resumes attached thereto, plaintiffs' lawyers have extensive experience and expertise in prosecuting complex class actions, including commercial, consumer, and banking cases. Lowney Decl., ¶¶4-9, Ex. 4; Stevenson Decl., ¶ 9. And "courts generally hold that the employment of competent counsel assures vigorous prosecution." *South Carolina Nat'l Bank*, 139 F.R.D. at 331. What is more, this Court previously appointed Smith & Lowney and Hagens Berman as settlement class counsel in the *Bank of America* matter, and appointed Smith & Lowney as class counsel in the *Chase* matter. Lowney Decl., ¶ 4-5, Ex. 1-3; Stevenson Decl., ¶ 5; *Chase*, 2019 U.S. Dist. LEXIS 110396 at *34. Qualified counsel have pursued this litigation vigorously, and they remain committed to advancing and protecting the common interests of all members of the class.

Thus, the demands of Rule 23(a)(4) are satisfied here for purposes of this settlement.

**2.      In addition, the requirements of Rule 23(b)(3) are satisfied for purposes of settlement because common questions plainly predominate Plaintiffs' allegations and class treatment is the superior method for adjudicating a settlement of class member claims.**

Once the prerequisites of Rule 23(a) are satisfied, the Court must determine if one of the subparts of Rule 23(b) is also satisfied. *Amchem*, 521 U.S. at 615. Here, Rule 23(b)(3) is satisfied because, with plaintiffs' substantial allegations, questions common to class members predominate over questions affecting only individual class members, and the class action device provides the best method for the fair and efficient resolution, via settlement, of class members' claims.

When addressing the propriety of class certification, the Court should consider the fact that, in light of the settlement, trial will now be unnecessary, such that the manageability of the class

for trial purposes is no longer a relevant question nor need the Court reach dispositive conclusions of unsettled legal questions. *Flinn v. EMC Corp.*, 528 F.2d 1169, 1172-73 (4th Cir. 1975) ("The trial court should not . . . turn the settlement hearing into a trial or a rehearsal of the trial nor need it reach any dispositive conclusions on the admittedly unsettled legal issues in the case."); *Carson v. Am. Brands Inc.*, 450 U.S. 79, 88 n.14 (1981) (the court "need not decide the merits of the case or resolve unsettled legal questions").

Furthermore, USAA Bank does not oppose this motion to certify the settlement class and approve the Parties' class settlement.

### a. Common questions predominate in this case.

Rule 23(b)(3) requires an examination of whether "questions of law or facts common to the members of the class predominate over any questions affecting only individual members . . . ." As the Supreme Court stated in *Amchem*, the "Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." 521 U.S. at 623. It "does *not* require a plaintiff seeking class certification to prove that each elemen[t] of [her] claim [is] susceptible to classwide proof." *Amgen, Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 469 (2013) (further citation omitted) (emphasis and modification in original). Instead, the rule only requires "that common questions *predominate* over any questions affecting only individual [class] members." *Id.* (emphasis in original).

In a "settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial." *Amchem*, 521 U.S. at 620. Also, as this Court noted in *Chase*, "that damages may be individual is rarely determinative of the Rule 23(b) inquiry in consumer class actions . . . . The focus rather is on whether common questions of liability predominate." 2019 U.S. Dist. LEXIS 110396 at *22 (citing *In re Nexium Antitrust Litig.*, 777 F.3d 9, 21 (1st Cir. 2015)) (additional citations omitted).

23

In light of the above, and for purposes of this settlement, common questions plainly predominate. Among the predominate questions, which are released by the settlement, are: whether the defendant unlawfully failed to provide to class members the benefits entitled to them under the SCRA and MLA; whether the defendant failed to provide promised benefits to military families under its own proprietary interest reduction program; and whether, by way of the conduct alleged in the complaint, the defendant violated, *inter alia*, the SCRA and the Nevada Unfair and Deceptive Trade Practices Act. FAC at ¶¶ 44-45.

Again, this Court found substantially similar common questions predominated in *Chase*, 2019 U.S. Dist. LEXIS 110396 at *23-34, a conclusion the Fourth Circuit did not disturb, 2019 U.S. App. LEXIS 24846. The predominance requirement is satisfied here too, because common questions here predominate over any individual questions in this settlement context.

### b. Class treatment is the superior method for adjudicating claims of members of the proposed settlement class.

As for the requirement in Rule 23(b)(3) that the class action be "superior to other available methods for fair and efficient adjudication of the controversy," class treatment will facilitate the fair and efficient resolution, via settlement, of all putative class members' claims. Given that tens of thousands of servicemembers and veterans fall within the defined class, the class device is the most efficient and fair means of adjudicating these many claims.

Here, "[t]he alternative to a class action litigation in this case would be, of course, individual lawsuits by each class member." *Romero*, 796 F. Supp. 2d at 716. Requiring servicemembers to pursue individual cases would have a negative effect on military readiness. As this Court also noted in *Romero*, "[e]ven if the putative class members were inclined to pursue individual actions, there is no doubt this would be more burdensome on the class members, and it would likely be a less efficient use of judicial resources." *Id*. This is particularly true in this case

24

in light of the arms-length settlement that has already been negotiated and will provide immediate monetary benefit to the settlement class members. Class treatment is far superior to the alternative of thousands upon thousands of individual suits or piecemeal litigation; in this matter, the class action mechanism will function to conserve scarce judicial resources and promote the consistency of adjudication. Accordingly, the superiority aspect of Rule 23(b)(3) is readily met.

**C.    The Court should appoint Hagens Berman Sobol Shapiro LLP and Smith & Lowney, PLLC as class counsel in this action and appoint the named Plaintiffs as class representatives.**

Rule 23(g)(2)(4) directs the Court to appoint class counsel who will "fairly and adequately represent the interests of the class." Per the Rule, in appointing class counsel the Court must consider: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv). The Court "may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B).

Both Hagens Berman and Smith & Lowney have vast experience with class action and other complex civil litigation. Lowney Decl., ¶¶ 4-9, Ex. 4; Stevenson Decl., ¶ 9. Both firms were appointed by this Court as class counsel in the related matter *Childress v. Bank of America.*, No. 5:15-cv-231-BO, DE 126 (September 13, 2017) (Lowney Decl., Ex. 1), and Smith & Lowney was appointed as class counsel by this Court in *Chase*, wherein the Court noted "Class Counsel achieved extraordinary results for the class . . . The Class is represented by nationally recognized and highly experienced Class Counsel who resolved this matter with skill and persistence . . . Plaintiffs had to overcome many of the obstacles faced in complex, multi-state class action litigation, and were able to successfully certify the first ever non-settlement class action under the

25

Servicemembers Civil Relief Act." *Chase,* No. 5:16-cv-00298-BO, DE 360 at 2–3 (Lowney Decl., Ex. 3). These firms will continue to associate with skilled local counsel, as they have throughout this action.

Founded in 1993, Hagens Berman is now one of the largest and most successful plaintiffs' class action firms in the country, having litigated and settled many of the largest class action cases in history. Stevenson Decl., ¶ 9. It routinely litigates consumer class action cases in federal courts across the country against many of the largest corporations in the world, including many cases against the largest commercial and investment banks around the world. *Id*. Because of this success, Hagens Berman is able to bring substantial financial resources to bear in complex, long-duration, class action litigation. *Id*.

Founded in 1996, Smith & Lowney has extensive experience and expertise in prosecuting complex class actions, particularly consumer class actions against national banks. Lowney Decl., ¶¶ 4-9, Ex. 4 (identifying cases in which Smith & Lowney was appointed as class counsel).

Plaintiffs' counsel have committed substantial time and resources to the litigation of this action. Lowney Decl., ¶ 11. Plaintiffs' counsel have advanced all of the costs of bringing the case, and to date, have received no reimbursement or other compensation. *Id*. Over the past three years, Plaintiffs' counsel have analyzed and developed legal theories, worked with experts, conducted extensive discovery, and engaged in motions practice. *Id*. at ¶¶ 12-14. Plaintiffs' Counsel have also engaged in productive and now-successful settlement discussions, developed a complex settlement framework, and diligently worked to advance the interests of the class. *Id*. at ¶¶ 15-18.

Further, the named Plaintiffs in this case should be appointed as class representatives in this action. Plaintiffs are military servicemembers who had loans or credit card accounts with USAA Bank and who allegedly failed to receive interest rate benefits owed on the account under

the SCRA, MLA, and the Bank's own proprietary interest reduction program. FAC at ¶¶ 9-19. No plaintiff has any conflict with any other class member, and each will fairly and adequately protect the interests of the class.

**D.      The Court should approve the Settlement and proposed form and method of notice and administration of the settlement.**

"Rule 23(e)(1)(B) requires the court to 'direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise . . ..'" Manual § 21.312, at 293. In order to protect the rights of absent Class Members, the Court must direct the best notice practicable to them. *See, e.g.*, *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 174-75 (1974).

In addition, "Rule 23 . . . requires that individual notice in [opt-out] actions be given to class members who can be identified through reasonable efforts. Those who cannot be readily identified must be given the 'best notice practicable under the circumstances.'" Manual § 21.311, at 287.

Here, given that the Class Members have already been identified by USAA Bank for purposes of previous remediation efforts, direct notice will be easily facilitated. Lowney Decl., ¶ 19. The Parties have consulted with class action administration experts, Epiq Class Actions and Claims Solutions, whom the Parties propose to administer the Settlement and who will be prepared to facilitate notice to the Class Members and will provide the requisite mechanisms for those who desire to opt out. Lowney Decl., ¶¶ 22-23; Azari Decl., ¶¶ 20-28.

The proposed notice plan meets all requirements by:

- defining the Class;

- describing clearly the options open to Class Members and the deadlines for taking action;

27

- describing the essential terms of the proposed Settlement;

- disclosing any special benefits provided to the Class Representatives;

- providing information regarding attorneys' fees and costs;

- indicating the time and the place of the hearing to consider approval of the Settlement;

- describing the method for objecting to or opting out of the Settlement;

- explaining the procedures for allocating and distributing the Net Settlement Amount and clearly set forth any variations among different categories of Class Members;

- providing information that will enable Class Members to estimate their individual recoveries; and

- prominently displaying the address and phone number of Class Counsel and how to make inquiries.

Manual § 21.312, at 295 (citation omitted). Here, the proposed Notices, modeled on those provided by the Federal Judicial Center, satisfy these requirements. *See* Proposed Notices, Exs. D and E to the Settlement Agreement.

The notice program and related documents will ensure that notice to the Class occurs in a comprehensive and reasonable manner. Plaintiffs respectfully ask the Court to approve the proposed form and method of Notice.

**E.      The Court should adopt the Parties' proposed schedule including for final approval of the proposed Settlement.**

If the Court grants preliminary approval, the Court should then set a schedule toward final approval of the Parties' Settlement. The Plaintiffs, with the agreement of Defendants, respectfully request the following schedule, which is incorporated in the proposed order submitted with this motion:

28

| Event | Date |
|---|---|
| Preliminary Approval | Date of entry of this Order (see below) |
| Deadline for USAA Bank to transfer Settlement Amount | 10 business days after Preliminary Approval |
| Deadline for establishing dedicated Settlement Website | 30 calendar days after Preliminary Approval |
| Class Notice Deadline (Date by which the Administrator must complete the Notice Program) | 30 calendar days after Preliminary Approval |
| Deadline for filing Fee & Expense Award and Service Awards | 21 calendar days after the Class Notice Deadline (51 calendar days after Preliminary Approval) |
| Deadline to opt out of the Settlement | 45 calendar days after the Class Notice Deadline (75 calendar days after Preliminary Approval) |
| Deadline to file objections to the Settlement | 45 calendar days after the Class Notice Deadline (75 calendar days after Preliminary Approval) |
| Deadline for Administrator to file report of number of Class Opt-Outs and Notice Declaration with the Court | 14 calendar days before Final Approval Hearing |
| Last day to respond to any objections to the Settlement | 7 calendar days before Final Approval Hearing |
| Deadline for Class Counsel to file Motion for Final Approval | 7 calendar days before Final Approval Hearing |
| Final Approval Hearing | _____, 2024, at _____ a.m./p.m. (not earlier than 103 calendar days after Preliminary Approval) |

## IV.    CONCLUSION

For all of the foregoing reasons, Plaintiffs, with no opposition from the Defendants, ask respectfully that the Court grant preliminary approval of this proposed Class Settlement and the further relief requested here.


Submitted this the 2nd day of August, 2024.

**SMITH & LOWNEY, PLLC**

By:  */s/Knoll D. Lowney*
Knoll D. Lowney, NCSB # 61997
Claire Tonry, WSBA # 44497
Marc Zemel, WSBA # 44325
Alyssa Koepfgen, WSBA # 46773
2317 E. John Street
Seattle, Washington 98112
Telephone: (206) 860-2883
Facsimile: (206) 860-4187
Knoll@smithandlowney.com
Claire@smithandlowney.com
Marc@smithandlowney.com
Alyssa@smithandlowney.com

**HAGENS BERMAN SOBOL SHAPIRO LLP**

Steve W. Berman
Shayne C. Stevenson
1301 Second Ave., Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (203) 623-0594
steve@hbsslaw.com
shaynes@hbsslaw.com

**BALLEW PURYEAR PLLC**

Matthew D. Ballew, NCSB # 39515
Paul J. Puryear, Jr., NCSB # 41536
4000 Westchase Blvd. Ste. 300
Raleigh, NC 27607
Telephone: (919) 412-5920
mballew@ballewlaw.com
ppuryear@ballewlaw.com
*Local Rule 83.1 Counsel*

30

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing **Plaintiffs' Memorandum in Support of Motion for Preliminary Approval** has been electronically filed with the Clerk of Courts using the CM/ECF system.

This the 2nd day of August, 2024.

By:    _/s/Alyssa Koepfgen_
          Attorney for Plaintiffs